543 So.2d 908 (1989)
William D. ALLEN, D.D.S.
v.
LOUISIANA STATE BOARD OF DENTISTRY.
No. 88-C-2736.
Supreme Court of Louisiana.
May 1, 1989.
As Modified on Rehearing Granted in Part and Denied in Part June 29, 1989.
*909 Paul R. Baier, for applicant.
Guy Wootan, Patricia Haker, Wootan & Stakelum, for respondent.
COLE, Justice.
This case arises out of Dr. William D. Allen's petition for judicial review of the Louisiana State Board of Dentistry's decision suspending his license to practice dentistry for ten years. The district court, after an administrative remand and additional evidentiary hearings, reversed six of the Board's findings of professional misconduct but left the suspension intact. The Court of Appeal, Fourth Circuit, reversed three other of the Board's findings but otherwise affirmed the trial court.[1] We granted certiorari[2] to consider the important statutory and constitutional due process questions raised below, particularly those dealing with prosecutorial involvement in the administrative decision making process.

I. FACTS
On November 4, 1985, the Louisiana State Board of Dentistry (Board) brought formal charges against Dr. William Allen (Allen) alleging various violations of the Louisiana Dental Practice Act, La.R.S. 37:751 et seq. These charges arose out of complaints made to the Board by certain of Dr. Allen's former employees. The charges were investigated by Guy Wootan, counsel for the Board. Seven separate charges were filed, with specifications totaling 45 separate counts.[3] The Notice to Show Cause Why License Should Not Be Suspended or Revoked was set for an administrative hearing before a panel of four dentists on December 7, 1985. The hearing was continued until February 21, 1986 to permit discovery by the parties.
On February 13, 1986, Allen filed a federal civil rights lawsuit in U.S. District Court against all Board members and Wootan. The federal court abstained from hearing the case pending resolution of the State proceedings and the abstention was upheld by the U.S. Fifth Circuit Court of Appeals.[4] On February 20, 1986, Allen filed a Motion to Recuse all Board members because of the pending federal action. The Board denied the motion and the hearing *910 commenced as scheduled on February 21, 1986.
The administrative hearing, with Wootan serving as prosecutor for the Board, lasted four days, concluding on February 24. The four members of the disciplinary committee[5] (committee) took the matter under advisement and met on March 1, 1986 to deliberate and reach a decision. Neither Wootan nor Allen's counsel were present at these deliberations. When the committee deliberated, it had all the trial exhibits but it did not have the transcript of the hearing. Certain members of the committee had notes they had made during the hearing. After two and one half hours of deliberation, the committee found Allen "guilty" of 27 of the 45 violations charged, fixed the fines for these violations at $25,500.00, suspended Allen's license for ten years with an additional ten years probation, and ordered him to pay costs of $61,478.19.
On the following Monday, Dr. de la Houssaye, the chairman of the committee, contacted Wootan. He informed him of the committee's decision and instructed him to prepare the findings of fact and conclusions for the committee. The parties dispute whether Dr. de la Houssaye informed Wootan of any factual findings of the committee apart from the "guilty/not guilty" decision and the amount of the fines. Wootan then drafted detailed findings and conclusions which were signed by each committee member.
Dr. Allen subsequently filed three separate petitions for rehearing with the Board. In the petition filed February 26, 1986 (before the committee met to deliberate), Allen accused Wootan of inciting an illegal entry into his office by Brenda Gremillion and Terry Marino, two former employees of Dr. Allen who were among the initial complaintants. These accusations were supported by affidavits given by Gremillion and Marino. On April 14, 1986, the committee denied the petitions. Wootan again drafted the reasons for the committee's denial of rehearing despite the accusations made against him.
Beginning on March 27, 1986, Allen filed several petitions for judicial review of the Board's decision in the Civil District Court for the Parish of Orleans. On May 2, 1986, the trial court ordered the administrative hearing re-opened for two limited purposes: first, to develop a record concerning the illegal entry into Allen's office; and, second, to permit Allen to make all proffers of proof he was not allowed to make at the initial hearing. This limited rehearing was held June 21, 1986, and at its conclusion the committee orally reaffirmed its prior decisions.
On October 6, 1986, Allen filed a Petition for Evidentiary Hearing in the district court to develop a record concerning Wootan's involvement in the Board's decision making process and in drafting the findings and conclusions of the hearing committee. The district court denied the petition and the Court of Appeal, Fourth Circuit, affirmed. On November 21, 1986 this Court granted supervisory writs, reversed the Court of Appeal, and remanded the case to the district court to take evidence on the issue of Wootan's involvement.[6]
On May 29, 1987, Allen filed another Petition for Evidentiary Hearing in the district court, alleging he had new evidence of Wootan's involvement in the illegal entry into his office. An evidentiary hearing was held on both petitions on June 22, 1987 and argument was heard on Allen's Petitions for Judicial Review. On September 29, 1987, the trial court entered judgment reversing six of the Board's findings, reducing the fines accordingly, and affirming the board in other respects. Allen appealed and the Fourth Circuit, after reversing three additional findings of misconduct and reducing the fine, affirmed the trial court. Neither the trial court nor the Court of Appeal modified the ten year license suspension imposed by the committee and the Board.

*911 II. ISSUES
In his application for certiorari and briefs to this court, Allen raised four substantive and procedural issues:
1) Whether the Court of Appeal erred in finding the admission of evidence obtained in the illegal entry was proper;
2) Whether the Court of Appeal erred in concluding the dictates of the Louisiana Administrative Procedure Act and due process were not violated by Wootan's ex parte involvement in drafting the findings and conclusions adopted by the Board;
3) Whether the Court of Appeal erred in concluding the Board had no statutory duty under La.R.S. 37:779 to contact patients and thus substantiate the charges made by former employees; and
4) Whether the Court of Appeal erred in holding Allen was not denied his due process right to a fair hearing before an impartial tribunal.
All of these issues are properly subject to our review under the Louisiana Administrative Procedure Act. See La.R.S. 49:964(G).

III. ANALYSIS
A. Suppression of Evidence
Allen argues the Board and the courts below erred in failing to suppress evidence allegedly obtained in an illegal entry into his office on August 26, 1985 by two of the principal complainants: Brenda Gremillion and Terry Marino. He contends Wootan "incited" the break-in and the Board "knowingly" utilized the fruits of the illegal entry. The Board denies both charges and submits they are not supported by the record. Apart from the legal issues raised by this allegation, two critical factual questions are presented: who knew what and when did they know it?
The chief fact supporting Allen's allegation Wootan "incited" the break-in is that the illegal entry occurred on the evening of August 26, 1985. Wootan had spoken with Terry Marino by telephone that same day. Marino and Gremillion testified Wootan told them it would be "helpful" if they could remember names, dates and the procedures they performed on patients contrary to the Louisiana Dental Practice Act. The two women stated they entered Allen's office through a window at approximately 10:00 P.M. They then copied information concerning patients and procedures from appointment books into a small notebook they brought with them. The information they obtained in the break-in was allegedly passed on to Wootan. Gremillion positively stated, however, that she did not inform Wootan how she had obtained the information she provided.[7]
We conclude, as a matter of fact, Wootan did not in any way "incite" the illegal entry into Allen's office. It seems undisputed that Wootan, and therefore the Board, did not know of the break-in until after the disciplinary committee hearing in February, 1986. Thus we find Allen's claim the Board "knowingly" utilized illegally obtained evidence is also without merit.
In light of these factual determinations, the application of the pertinent legal rules becomes relatively straightforward. Allen asks us to apply the exclusionary rule in an administrative proceeding to suppress information illegally obtained by private parties acting independently. Following well-established legal principles, we decline to do so.
As the Court of Appeal correctly observed, the exclusionary rule is designed as a general deterrent to future violations of constitutional rights rather than a private remedy for a past violation. United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). More importantly, the prohibitions of the Louisiana and United States Constitutions against illegal searches and seizures are aimed at governmental *912 conduct rather than the actions of private citizens operating independently of the government or its agents.[8] Here, the illegal search of Allen's office was done by private parties. Allen has failed to produce evidence showing them to be in any way "agents" of the Board. Therefore, the exclusionary rule does not apply here.
In addition, the applicability of the exclusionary rule in administrative proceedings has been the subject of much debate. See generally Note, The Applicability of the Exclusionary Rule in Administrative Adjudicatory Proceedings, 66 Iowa L.Rev. 343 (1981). We addressed this issue in our recent opinion in Pullin v. Louisiana State Racing Comm'n, 484 So.2d 105 (La.1986) (on rehearing). In Pullin, a plurality of this Court refused to apply the exclusionary rule in an administrative license revocation proceeding even though the evidence had been illegally seized by police officers.[9] Rather than impose a per se exclusionary rule on the admissibility of improperly obtained evidence in administrative proceedings, we adopted the balancing test developed by the U.S. Supreme Court in United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). We observed: "The appropriateness of extending the [exclusionary] rule to a particular proceeding is to be determined by the likely social benefits of excluding unlawfully seized evidence against the likely social costs." 484 So.2d at 106.
Under this test, the case for application of the exclusionary rule is much weaker here than it was under the facts of Pullin. There is no apparent social benefit in applying the exclusionary rule in this case since the parties who acted improperly were private citizens. Gremillion and Marino, unlike the government agents in Pullin, are unlikely to be deterred from similar conduct in the future by the exclusion from this proceeding of their ill-gotten evidence. Since the Board did not incite the illegal entry or knowingly use the tainted evidence, application of the rule is not needed to deter the Board from illegal conduct. On the other side of the balance, the costs of excluding the improper evidence and its alleged "fruits" would be high. The state has a strong interest in enforcing its dental practice regulations for the protection of the health of its citizens. We therefore find, under the Pullin test, the Board and the lower courts did not err in failing to exclude the evidence of which Allen complains.
Finally, Allen urges us to exclude the evidence under the rule adopted by the U.S. Seventh Circuit Court of Appeals in Knoll Associates, Inc. v. Federal Trade Comm'n, 397 F.2d 530 (1968). In Knoll, the court applied the exclusionary rule to documents stolen by a private party but later used by the administrative agency in its administrative action against the company. Even if we were convinced of the wisdom of the per se rule apparently employed by the U.S. Seventh Circuit, Knoll is readily distinguishable from the present case. In Knoll, the court found the Commission's representatives knew the private party had stolen the documents he gave them for use in the prosecution. 397 F.2d at 537. We have concluded as a matter of fact that the Board and its representative, Wootan, did not knowingly use illegally *913 obtained evidence. We therefore find Knoll is inapposite.
We conclude the Court of Appeal did not err in refusing to apply the exclusionary rule to the evidence illegally obtained by Gremillion and Marino. Allen did not show that Wootan "incited" the illegal conduct or that the Board "knowingly" used unlawfully obtained information. In light of these factual shortcomings, Allen cannot prevail on this issue under our established jurisprudential rules governing the role of the exclusionary rule in administrative adjudicatory proceedings.
B. Prosecutorial Involvement in Drafting Decision
It is clear from the record that Wootan, the Board's prosecutor, drafted the formal findings of fact and conclusions of the committee. Wootan's participation was ex parte and without notice to Allen. Allen was given no opportunity to object to the prosecutor's proposed findings and conclusions prior to the committee's adoption of them. On the other hand, it is equally clear that Wootan did not play any role in the committee's decision on the ultimate issue with respect to any individual charge, i.e., whether Allen was "guilty" or "not guilty." Nor did Wootan fix the penalty assessed. One fact very much in dispute is the precise extent of Wootan's involvement in drafting the committee's detailed findings and conclusions. The Court of Appeal concluded Dr. de la Houssaye, the committee chairman, had spoken at length with Wootan as to the committee's reasons for judgment. We disagree.
At the evidentiary hearing on the issue of Wootan's involvement in the drafting of the committee's findings, all four members of the committee testified, as did Wootan and his former paralegal, Marcia Kisner. Wootan said Dr. de la Houssaye had given him a brief statement of the committee's reasons for ruling as it did. Dr. de la Houssaye first testified he did not dictate detailed findings and conclusions to Wootan. Later in the hearing he stated he had given Wootan detailed reasons for the committee's findings, including detailed notes on the testimony of each witness. The testimony of the other three members of the panel clearly indicates the committee members never even arrived at detailed findings and conclusions. They delegated this task to Wootan in his role as counsel to the Board. Dr. Merrick Dugal specifically testified the committee formulated no reasons at all but only reached a final decision on each specification and the penalty to be imposed. Kisner, who assisted Wootan in preparing the findings and conclusions, testified she worked from notes she had made as the prosecutor's assistant at the committee hearing. She used no findings by the committee in preparing the draft.
From these facts, we find the Court of Appeal erred in concluding the committee's opinion was not largely the product of the Board's prosecutor. Wootan was not merely a scribe; he became the main fact finder. The detailed findings and credibility judgments which were offered in support of the committee's final decision and which play such a critical role in meaningful judicial review were simply not those of the neutral hearing committee. They were the secret product of an advocate. This infirmity is not cured by the fact Wootan's draft was adopted verbatim by the committee members after minimal review. La.R.S. 49:958 specifically provides that if a party submits proposed findings of fact under agency rules, the "decision shall include a ruling upon each proposed finding." This requirement was plainly not met.
The committee members were apparently of the opinion that their findings of fact needed to be drafted by a lawyer and cast in "legal language." The Louisiana Administrative Procedure Act imposes no such requirement. All the committee needed to do was articulate, in its own words, the reasons for its conclusions. If the committee thought the assistance of an attorney was desirable, it should have contacted an independent counsel, not the prosecutor, and given this attorney the reasons why the committee reached the conclusions it did. This procedure would avoid even the appearance of impropriety and *914 furnish no basis for the objections Allen raises here.
Wootan's involvement in drafting the opinion of the committee renders the decision infirm on both statutory and due process grounds. The ex parte nature of Wootan's participation is specifically proscribed by La.R.S. 49:960(A).[10] His contact with the decision maker was not limited or inconsequential.[11] Indeed, by drafting the committee's findings and conclusions, Wootan put himself in the position of the adjudicator. He performed duties delegated to the committee as trier of fact under the Administration Procedure Act. See La.R. S. 49:958 ("A final decision shall include findings of fact and conclusions of law."). Second, we conclude Allen's statutory rights were prejudiced by the violation. R.S. 49:960(A) and other procedural protections afforded by the Louisiana Administrative Procedure Act are designed to insure that persons subject to the administrative process receive a fair hearing before a neutral decision maker. This basic statutory purpose is defeated when an advocate performs the adjudicatory function of arriving at findings of fact.[12]
The Board argues Allen's due process right to a neutral adjudicator was not violated here since the committee had decided the ultimate question of guilt prior to Wootan's participation and since the committee members subsequently signed the draft opinion. We reject both these arguments. The first fails because the committee's conclusions on the ultimate issue are only as strong as their factual basis. Wootan cannot be considered a neutral party; his role was that of advocate, one who has developed the "will to win." See Grolier, Inc. v. Federal Trade Comm'n, 615 F.2d 1215 (9th Cir.1980). He is not given adjudicatory authority under the Dental Practice Act, yet he supplied the factual findings that provide the essential support for the committee's conclusions. The ex parte nature of Wootan's involvement distinguishes the procedure followed here from the practice of some trial courts of allowing counsel to prepare draft "reasons for judgment" for the court. We conclude that since Wootan's "involvement" in the decision process began before the adjudicators' task was done, i.e., before the committee had arrived at findings of fact and reasons for judgment, Allen's right to a neutral adjudicator was violated.
As to the Board's second contention, we find ample basis in the record to question the thoroughness with which the individual committee members reviewed Wootan's draft. The committee made no independent rulings on each proposed finding as required by R.S. 49:958 nor did the members discuss Wootan's draft among themselves. Moreover, this after-the-fact adoption of an ex parte draft is no substitute for the committee's own reasons as to why it ruled as it did. To so hold would be to mistake a rationalization for the rationale.[13] *915 The committee members' adoption of Wootan's findings does not avoid this problem.[14]
In light of the substantial powers given to administrative bodies, the courts must be vigilent in assuring that parties in administrative adjudications receive the procedural protections our law affords. As we held above, Wootan's dual role as prosecutor and factfinder violated Allen's right to a neutral adjudicator. In addition, however, this commingling of functions violated Allen's right to a hearing that is both fair and that has the appearance of fairness, and his right to meaningful judicial review.
First, Wootan's secret involvement in drafting the committee's opinion robbed these proceedings of the crucial appearance of fairness. As we observed in Matter of Rollins Environmental Services, Inc.: "Not only must there be impartiality on the part of a presiding officer in an administrative adjudicatory hearing, but there must also be in connection with the hearing the appearance of complete fairness." 481 So. 2d 113, 119 (La.1985) (footnotes omitted) (emphasis in original). Apart from the substantive unfairness caused by Wootan's roles as investigator, general counsel, prosecutor and fact finder, this commingling of functions clearly created the appearance of impropriety. This, coupled with the actual prejudice Allen suffered, is sufficient to constitute a denial of due process. See Bruteyn v. State Dental Council & Examining Bd., 32 Pa.Cmwlth. 541, 380 A.2d 497, 502 (1977).[15]
Another consequence of the commingling of the prosecutorial and adjudicative functions in this case is the harm done to Allen's right to meaningful judicial review under R.S. 49:964. A court's review of the substance of an agency decision is quite limited under R.S. 49:964(G). Under R.S. 49:964(G)(5), the agency's decision is subject to reversal only if it is "arbitrary or capricious or characterized by abuse of discretion...." Where, as here, there is no statement of reasons by the decision maker as to why it ruled as it did, it is impossible for a court to determine whether the decision maker acted arbitrarily and capriciously or not. See e.g., Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) ("post hoc" rationalizations are inadequate basis for review); Baton Rouge Water Works v. Louisiana Public Service Comm'n, 342 So.2d 609 (La.1977) (for review of agency decision, agency should make findings and give reasons for its determination), cert. denied 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 86 (1977); see also Force and Griffith, The Louisiana Administrative Procedure Act, 42 La.L.Rev. 1227, 1279-1282 (1982). Under R.S. 49:964(G)(6), the agency's factual conclusions are subject to a "manifest error" standard of review. Here, we simply do not know what factual findings and credibility judgments the committee actually made. Lastly, because of the agency's expertise, its findings are entitled to great weight. See Central Louisiana Electric Co. v. Louisiana Public Service Comm'n, 377 So.2d 1188 (La.1979); Baton Rouge Water Works, supra. Here, the findings to which we are asked to defer are not the findings of the committee but those of the presecutor.
In short, we find the commingling of prosecutorial and adjudicative functions violates both the letter of the Louisiana Administrative Procedure Act and the due process goals it is designed to further. The courts below erred in concluding otherwise. *916 The idea of the same person serving as judge and prosecutor is anathema under our notions of due process. Such a scenario is devoid of the appearance of fairness. Finally, such a practice renders meaningful judicial review impossible. In light of the infirmities in this proceeding, the committee's decision to suspend Allen's license to practice dentistry cannot stand.
C. Failure to Contact Patients
Allen's claim his due process rights were violated by the Board's failure to contact the patients involved in his alleged wrongdoing is clearly without merit. La.R. S. 37:779 establishes the procedure for filing charges against a dentist.[16] When the complaint is made by a citizen the Board is required to "substantiate the charge by determining that the citizen is informed and believes that the charge is true." R.S. 37:779. The Board clearly met its statutory obligations here. The charges in this case were duly filed under oath by Susan Dew, secretary-treasurer of the Board. The charges rested on complaints from citizens who had firsthand knowledge of the facts they alleged. The requirements of paragraph two of R.S. 37:779 do not apply here since the formal charges against Allen were made by Dew, not by the "citizens" themselves. We decline to read additional requirements into the statute on the basis of some undefined notion of due process.
D. Denial of Fair Hearing
Because we conclude a remand is proper on other grounds, we pretermit discussion of this issue.

IV. CONCLUSION
We conclude the Court of Appeal was correct in refusing to apply the exclusionary rule to the evidence illegally obtained by Brenda Gremillion and Terry Marino. There is no evidence the Board incited the illegal search or that it knowingly used the tainted evidence. Since suppression of the evidence would not serve as a deterrent, we decline to apply the exclusionary rule in this case. The Court of Appeal was also correct in finding the Board has no blanket duty to contact patients when the requirements of R.S. 37:779 are clearly met. Because we conclude this matter must be remanded on other grounds, we pretermit discussion of Allen's claim he was denied a fair hearing.
The Court of Appeal erred, however, in concluding Wootan's ex parte drafting of the findings of the committee was not improper. Wootan's conduct was clearly violative of R.S. 49:960(A) and 49:958 as well as Allen's basic due process rights to a neutral adjudicator and to a hearing that is both actually and apparently "fair." Wootan's drafting of the findings and conclusions of the committee also renders meaningful judicial review of the committee's decision to suspend Allen's license impossible. Because of the nature and gravity of the error in the administrative proceeding, we have no choice but to remand this matter to the Board for a hearing de novo. A remand is proper where the adjudicator's findings and conclusions cannot reasonably be implied from the record. Hay v. South Central Bell Telephone Co., 475 So.2d 1052 (La.1985); see also Buras v. Board of Trustees of Police Pension Fund of City of New Orleans, 367 So.2d 849 (La.1979) (failure to remand case to agency for development of proper record was error); but c.f. Baton Rouge Water Works, 342 So.2d at 613 (remand unnecessary where findings and reasons for agency decision clear from administrative record). Given the absence of *917 proper factual findings and reasons for judgment in the record before us, we have really nothing to review.
In this professional licensing case, the matter of a dentist's professional conduct is particularly within the expertise of the Board. This expertise, however, is not a substitute for reasoned findings. See Baltimore & Ohio Ry. Co. v. Aberdeen & Rockfish Ry. Co., 393 U.S. 87, 89 S.Ct. 280, 21 L.Ed.2d 219 (1968). The committee was also required to supply factual findings and legal conclusions under R.S. 49:958. It did not do so. The hearing record before us is replete with contradictory factual allegations and technical issues within the special competence of the Board. The factual disputes here cannot be readily resolved from a review of a "cold" record since credibility judgments are often involved. Judicial review of the technical issues assigned to the Board by the Legislature is not feasible absent proper factual findings and a reasoned analysis by the decision maker. Finally, under R.S. 49:964, we are forbidden to try this matter anew on the record. For these reasons, we remand this matter to the Board for a new hearing and the development of factual findings and reasoned conclusions of law that are the product of a neutral adjudicator, not the secretly produced, "post hoc" rationalizations of an advocate in the case.

V. DECREE
The decision of the Louisiana State Board of Dentistry suspending the license of Dr. William D. Allen for ten years and imposing fines and costs is reversed. The case is remanded to the Board for a new hearing on the existing factual record before a committee composed of dentists who have had no involvement in the present case. Furthermore, both parties shall have the opportunity to present additional evidence to supplement the original record. The new committee may, at its discretion, permit the recall of any witnesses if it deems this necessary to pass on their credibility.
REVERSED AND REMANDED.
DENNIS, J., concurs with reasons.
DIXON, C.J., dissents.
CALOGERO, J., dissents and assigns reasons and would grant a rehearing.
DENNIS, Justice, concurs.
I respectfully concur, disagreeing only with the majority opinion's treatment of relator's Assignment of Error # 1. The majority incorrectly concludes that, like the Fourth Amendment of the United States Constitution, the Louisiana Constitutional prohibition against illegal searches and seizures is "aimed [only] at governmental conduct rather than the actions of private citizens operating independently of the government or its agents." Article I, Section 5 of the Louisiana Constitution affords broader protection than the Fourth Amendment against invasions of privacy. See State v. Church, 538 So.2d 993 (La.1989); State v. Hernandez, 410 So.2d 1381 (La. 1982); State v. Hutchinson, 349 So.2d 1252 (1977); State v. Abram, 353 So.2d 1019 (La.1978); State v. Overton, 337 So.2d 1201 (La.1976); State v. Kinnemann, 337 So.2d 441 (La.1976); L. Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. (1974).
CALOGERO, Justice, dissenting.
The Board of Dentistry, not Wooten, deliberated on the evidence.
The Board, not Wooten, found the defendant in violation of the Louisiana Dental Practice Act.
And the Board, not Wooten, determined the appropriate penalties for these violations.
I simply cannot agree with the majority that under these circumstances, the Board's decision to have Wooten author its formal findings requires this Court to reverse the Board (as well as the court of appeal and the trial court) and to remand for a new hearing.
The majority relies upon Bruteyn v. State Dental Council & Exam. Bd., 32 Pa.Cmwlth. 541, 380 A.2d 497 (1977). There, the court indeed concluded that the prosecutor, who took it upon himself "to amend and supplement certain findings" of the dental board, overstepped his prosecutorial function to the point that the outcome of the proceeding was tainted, and due process considerations required a new hearing. 380 A.2d at 502. In so holding, *918 the Pennsylvania court distinguished the earlier case of State Dental Council & Exam. Bd. v. Pollack, 457 Pa. 264, 318 A.2d 910 (1974). In that case, the court concluded that the prosecutor's assistance in drafting the dental board's findings did not taint the administrative judgment, because:
"such assistance came after the Board had reached its decision and the assistant [the prosecutor] in no way participated in or influenced the decision.... While it would be a better practice to have review of adjudications conducted by an individual who did not participate in the prosecutorial role, we can find no prejudice here, where the Board reached its decision independent of and prior to any assistance from the representative of the Department of Justice. Appellant was not denied due process in this regard." 457 Pa. at 272-73, 318 A.2d at 915. (emphasis added)
If indeed we are to rely on Pennsylvania law as persuasive authority for resolving this issue, it would appear that Pollack is more factually similar to this case than Bruteyn. As I read the majority opinion in this case, it does not hold that the administrative hearing itself was tainted. Nor does it conclude that the Board's determinations as to the violations that occurred or the penalties that were imposed were not independently reached. And, finally, it does not conclude that the record does not support the board's determinations in that regard. The majority's only quarrel is with the manner in which the Board chose to articulate its ruling.
Absent some showing of actual prejudice to the defendant caused by the fact that the prosecutor authored the board's findings, I am unwilling to conclude that the rulings below must be reversed and that the case must be remanded for a new hearing. Instead, I believe we should have rejected defendant's argument regarding the alleged improper role played by the prosecutor, and proceeded to determine the merits of the case (that is, whether the Dental Board's ruling or any portion thereof, as modified by the courts below, was unreasonable, arbitrary, capricious or amounted to an abuse of discretion, considering the evidence).
NOTES
[1] 531 So.2d 787 (La.App. 4th Cir.1988).
[2] 536 So.2d 1226 (La.1989).
[3] Charges 1-4 charged that Allen permitted persons not licensed as dentists to engage in the practice of dentistry. Charge 5 alleged Allen had engaged in insurance fraud. Charge 6 alleged Allen had used the services of a dental technician to construct and repair dentures without a proper signed work order. Charge 7 alleged Allen had engaged in misleading" bait and switch" advertising.
[4] Allen v. Louisiana State Board of Dentistry, 835 F.2d 100 (5th Cir.1988).
[5] The four members of the hearing committee were: Dr. Lionel de la Houssaye, chairman; Dr. Russell DiMarco; Dr. Merrick Dugal; and Dr. N. Francis LaBorde.
[6] 497 So.2d 304 (La.1986).
[7] We find absolutely no support in the record for Gremillion's assertion that Wootan told her to secretly copy Allen's appointment book and patient charts at a nearby drug store. It is not alleged that this actually took place. The evidence simply does not bear out the "conspiracy" theory Allen urges.
[8] This has been the clear rule under the Fourth Amendment to the U.S. Constitution since at least 1921. See Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); see also United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). This Court has arrived at a similar conclusion. See State v. Gentry, 462 So.2d 624 (La.1985); see also Jenkins, The Declaration of Rights, 21 Loyola (La.) L.Rev. 9 (1975):

The Section [La.Const. Art. I, § 5 (1974) ] is intended to apply solely to government action in accord with the view of the committee that a bill of rights cannot reach private action. Absolutely nothing in the proceedings of the Convention or in the discussions of the committee indicates an attempt to proscribe privately conducted searches and seizures....
Id. at 28.
[9] As the U.S. Supreme Court observed in United States v. Janis, it has never applied the exclusionary rule to exclude evidence from a federal or state civil proceeding. 428 U.S. 433, 447, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046 (1976). ("In the complex and turbulent history of the rule, the Court has never applied it to exclude evidence from a civil proceeding, federal or state.")
[10] The statute provides:

Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a case of adjudication noticed and docketed for hearing shall not communicate, directly or indirectly, in connection with any issue of fact or law, with any party or his representative, or with any officer, employee, or agent engaged in the performance of investigative, prosecuting, or advocating functions, except upon notice and opportunity for all parties to participate.
La.R.S. 49:960(A) (emphasis added).
[11] Cf. Dorsey v. Administrator, Louisiana Dept. of Employment Security, 353 So.2d 363 (La.App. 1st Cir.1977), writ denied 355 So.2d 549 (La. 1978). There the court concluded the ex parte contact had in no way influenced the decision maker. We cannot reach a similar conclusion under the facts of this case since Wootan supplied the committee with an essential element of its final judgmentthe facts on which it rested.
[12] See generally 4 J. Stein, G. Mitchell and B. Mezines, Administrative Law § 33.02[1] (rev.ed. 1989); K. Davis, Administrative Law Treatise § 18.1 (2nd ed. 1980).
[13] As Professor Jaffe remarked in another context:

To abstract out of a case that part of the evidence which can be made to support a conclusion is to imagine an abstract case, a case that was never tried. A conclusion based on such abstracted evidence may be "rational," but it is not a rational decision of the case which was in fact tried.
L. Jaffe, Judicial Control of Administrative Action 601 (1965) (footnote omitted).
[14] The Board also contends any taint caused by the ex parte nature of Wootan's participation was cured by the availability of an application for rehearing. This argument is untenable. The statutory violation of the ex parte contact is not cured by the availability of rehearing. In addition, Wootan, again ex parte, drafted the committee's reasons for denying Allen's petitions for rehearing.
[15] Bruteyn is factually on all fours with this case. There, as here, a single attorney served as investigator and prosecutor and then drafted the opinion of the Board. The Bruteyn court also found, as we do, that the defendant suffered actual prejudice in addition to being denied the appearance of a fair hearing. We need not, and do not, decide whether the mere appearance of unfairness would be sufficient to vitiate an administrative decision absent a showing of actual prejudice.
[16] The statute provides in relevant part:

All charges against a dentist or a dental hygienist under R.S. 37:776 or 37:777 for violations of this Chapter shall be made under oath either by the secretary-treasurer ... or any citizen, and submitted to the president of the board, who, unless for good and sufficient cause shown by his written reasons, shall appoint a committee of three or more members of the board besides himself to hear the charge....
Where the charge is made by a citizen, he should state the sources of his information and the grounds of his belief, and ... an agent of the board shall substantiate the charge by determining that the citizen is informed and believes that the charge is true.
La.R.S. 37:779.