IxLOBRANO, Judge.
Dr. Reynolds appeals the trial court’s affirmation of the administrative findings of the Louisiana State Board of Medical Examiners (Board) which suspended his license to practice for a limited time period and imposed other sanctions.[1]
On April 24, 1992, after an administrative hearing, the Board found Dr. Reynolds guilty of treating eleven patients with controlled substances, which, in quantity and duration exceeded any legitimate medical justification.[2] In detailed findings of fact and conclusions of law the Board meticulously presented the specifics of each of the eleven patients treated by Dr. Reynolds and concluded as follows:
“[W]e note that in every ease presented, the overall dosages of the major preparations prescribed exceed recommended levels in quantity, duration, or both. It is also apparent that, in almost every case, Dr. Reynolds knew, or had reason to know, that the patient had a history of drug abuse in one form or another, and was aware that he was prescribing drugs in *1246 excess of the standard practice of the community.”
Dr. Reynolds sought review in the district court. He also filed a rule in that court seeking the introduction of de novo evidence to supplement the administrative record. The court denied that request and affirmed the Board’s findings based on its review of the administrative record.
| gDr. Reynolds perfects this appeal presenting four due process arguments, as well as a sufficiency of evidence argument. Based on the following review and discussion of each argument, we affirm the trial court.

DUE PROCESS:

First, Dr. Reynolds asserts that his due process rights were violated because certain evidence against him was presented to the Board, outside of his presence, while the Board was considering a consent proposal he submitted. This “ex parte” consideration by the Board, he asserts, tainted its decision making process at the formal administrative hearing. We disagree.
Dr. Reynolds submitted to the Board two proposed “Consent Orders” dated May 23, 1991 and July 19, 1991 in an attempt to resolve the matter without a formal hearing. Both of those documents contain the following acknowledgement by Dr. Reynolds:
“By his subscription hereto, Dr. Reynolds also hereby authorizes the Investigating Officer designated by the Board with respect hereto, personally and/or through legal counsel to present this Consent Order to the Board for its consideration and to fully disclose to and discuss with the Board the nature and results of the investigation.”
In addition, the transmittal correspondence by the Board’s attorney to Dr. Reynolds’ attorney referencing the proposed Consent Order also advises that “Dr. Reynolds’ signature on the Consent Order will operate as his consent to have [the investigating officer or the Board’s attorney] present the facts of the case” to the Board.
Quite simply, Dr. Reynolds attempted to settle the complaint against him and the Board refused. In the process, Dr. Reynolds gave his consent to the Board’s review and consideration of the investigative facts of his case. That consent constitutes a waiver of any due process rights. We find no due process violation in this procedure. To the contrary, it would be a dereliction of the Board’s duty not to consider the pros and cons of the case before entering into a consent decree. Dr. Reynolds has no constitutional right to be present during the Board’s deliberations about the propriety and sufficiency of the settlement offer.
^Second, Dr. Reynolds argues that the District Court deprived him of his fundamental right to a de novo trial and his right to present additional evidence. In support, he cites numerous cases, including our decision in Cefalu v. Board of Medical Examiners, 618 So.2d 471 (La.App. 4th Cir.1993), writ denied, 623 So.2d 1307. We initially note that Cefalu does not support his position. That case involved a de novo hearing before the Board on the defendant’s motion to re-cuse certain Board members. After being unsuccessful at that level, the defendant went to the District Court in his continuing attempt to have certain members recused. At the District level, there was no additional evidence offered, only a review of the evidence submitted at the administrative level.
De novo evidence at the district court level is not entirely prohibited, however. In certain limited instances additional evidence may be received. Those instances are confined to the situations where there are alleged procedural irregularities before the board and which irregularities are not already shown in the administrative record. La.R.S. 49:964(F). In Dr. Reynolds’ case, the trial court properly ruled that additional evidence was not necessary to consider his claims of irregularity. Those claims are Dr. Reynolds’ other two due process arguments, which we continue to address.
Third, Dr. Reynolds argues that the entire proceedings against him were improperly initiated by Dr. Kaplan, a Board member and thus the subsequent proceedings were illegal as “fruit of the poisonous tree.” His complaint is that Dr. Kaplan obtained a computer printout from a pharmacy which showed an inordinate number of prescriptions for con *1247 trolled drugs -written to a suspected drug abuser. This information was subsequently turned over to the State Police, and eventually led to the Board’s investigation of Dr. Reynolds.
Initially we observe that Dr. Kaplan was recused from participating in this matter from the outset. He is from the same community as Dr. Reynolds. In his deposition Dr. Kaplan did not recall obtaining a computer print out. However, whether he did or did not is of no relevance to the subsequent investigation by the Board. Dr. Reynolds has failed to show how the initial inquiries, whether instigated by Dr. Kaplan or the State Police, deprived him of a fair hearing.
UDr. Reynolds cites La.R.S. 37:1278.1 which authorizes the board to subpoena a physician’s records despite the patient-doctor privilege of confidentiality. Somehow, he urges that this statute was violated by Dr. Kaplan, and thus caused the entire proceedings against him to be tainted. Assuming Dr. Kaplan did obtain the records of the pharmacy, those are not covered by the cited statute, which covers only a physician’s records. More important, however, is the fact that plaintiff has failed to demonstrate how he was prejudiced and/or did not receive a fair hearing. His suggestion that the subsequent proceedings are “fruit of the poisonous tree” and should be quashed simply has no basis in law with respect to these administrative proceedings.
The last due process argument Dr. Reynolds urges is the Board’s denial of his request to cross-examine them. Dr. Reynolds argues that because the Board members used their own expertise and training in deciding the complaint against him, he should have been allowed to interrogate them. In support he cites Allen v. Louisiana State Board of Dentistry, 543 So.2d 908 (La.1989).
Allen is not supportive of Dr. Reynolds’ position. In Allen the court held that it was improper for the attorney who was prosecuting the complaint before the Dentistry Board to take part in the adjudicatory process. That is totally different from the instant case.
Professional boards, such as the Medical Board, are obligated to use their expertise in deciding issues which come before them. Courts are cognizant of the strong presumption of validity and propriety where casting judgment on a fellow member of a profession is within the peculiar expertise of the Board members. Montalbano v. Board of Medical Examiners, 560 So.2d 1009 (La.App. 4th Cir.1990). The fact that professionals are judged by a Board of their peers does not confer upon the accused the right to cross examine them. We know of no statutory or jurisprudential rule of law that grants such a right. The Board is the adjudicatory body and is free to utilize their professional skills and expertise in reaching a decision. And their findings of fact and conclusions of law adequately explain the reasons for that decision. We find no due process violation in that procedure.

INSUFFICIENCY OF EVIDENCE:

Finally, Dr. Reynolds argues that the evidence presented does not support the Board’s finding that he violated the acceptable standard of medical care by prescribing controlled substances which, in quantity and duration, exceeded any legitimate medical justification. The standard of appellate review of a decision by an administrative agency such as the Louisiana State Board of Medical Examiners was summarized by this court in Montalbano, supra, as follows:
“The scope of appellate review of action taken by an administrative agency is limited to a determination of whether the decision was unreasonable, arbitrary or capricious or amounted to an abuse of discretion. Delta Bank and Trust Co. v. Lassiter, 383 So.2d 330 (La.1980); Hughes v. Louisiana State Board of Dentistry, 490 So.2d 1097 (La.App. 4th Cir.1986), writ denied, 496 So.2d 326 (La.1986), cert. denied, 480 U.S. 933, 107 S.Ct. 1573, 94 L.Ed.2d 764 (1987). The appellate court may reverse the decision of the agency if the substantial rights of the appellant have been prejudiced. Hughes, supra.
“Further, in reviewing such actions, courts must be cognizant of the strong presumption of validity and propriety in such ad *1248 ministrative actions where casting judgment upon the professional behavior of a fellow member of a profession is a matter peculiarly within the expertise of an agency composed of members of that profession. Wilcox v. Louisiana State Board of Medical Examiners, 446 So.2d 502 (La.App. 4th Cir.1984), unit denied, 450 So.2d 359 (La.1984); Fisher v. Louisiana State Board of Medical Examiners, 352 So.2d 729 (La.App. 4th Cir.1977), writ denied, 353 So.2d 1338 (La.1978).”
Dr. Reynolds claims that the Board relied too heavily on the opinion of its expert, Dr. I.C. Turnley, and did not give sufficient weight to the deposition testimony of several physicians offered in support of Dr. Reynolds. This argument is based on the fact that Dr. Turnley never examined or treated any of the patients listed in the administrative complaint filed against Dr. Reynolds, whereas most of the physicians who testified on his behalf had each treated at least one of these patients. According to Dr. Reynolds, those physicians were in a better position to determine what was appropriate medical care for these patients.
Dr. Turnley reviewed Dr. Reynolds’ records for the patients whose treatment is at issue. His opinion was that the amounts of certain drugs prescribed by Dr. Reynolds for these patients was excessive. He also stated that some of the drugs prescribed by Dr. | gReynolds present the potential for addiction when taken for the lengthy periods and in the large dosages prescribed by Dr. Reynolds. Dr. Turnley testified that Dr. Reynolds’ records indicated that he continued to prescribe controlled substances to these patients even though he knew or should have known that some of these patients were abusing the medications.
Dr. Reynolds testified and defended the amounts of controlled substances prescribed by him to these patients. He claimed they suffered chronic pain and needed the levels of medication prescribed. However, Dr. Reynolds’ testimony and records also reveal that he knew or suspected that some of these patients were abusing the medications. He admitted that he should have referred some of these patients to specialists rather than just continuing to prescribe medication to them. His reason for not recommending that these patients consult specialists was that he did not think they would follow that advice. Dr. Reynolds even admitted that in one case, he prescribed too much medication to a patient. With regard to that patient, Dr. Reynolds stated:
“[Pjerhaps I was too lenient in prescribing that medication for him. Perhaps I erred in his behalf in prescribing him pain medication a little too much, not grossly, not out of any wrong intention on my part ...”
The deposition testimony of the various physicians offered by Dr. Reynolds essentially supports his argument that they agreed that the amount of medications Dr. Reynolds prescribed could be justified in most cases. However, even some of the testimony offered was not completely favorable to Dr. Reynolds. Dr. Clark Sauls, a general surgeon, stated that a combination of certain drugs prescribed to one patient for more than a year by Dr. Reynolds presented the risk of drug addiction. Dr. Leo Lowentritt, a urologist, stated his opinion that Dr. Reynolds should have exercised more discretion in authorizing refills of certain prescriptions.
Considering the evidence presented we do not find that the Board’s findings were unreasonable, arbitrary or capricious or amounted to an abuse of discretion. The testimony presented as to Dr. Reynolds’ reputation in the medical community as a hardworking, compassionate physician who is well respected by his colleagues was taken into consideration by the Board and was. cited by the Board as a mitigating factor in its deeision 17as to the degree of sanctions imposed against Dr. Reynolds. Nevertheless, substantial evidence was presented to a panel of medical experts who found that Dr. Reynolds prescribed controlled substances which, in quantity and duration, exceeded any legitimate medical justification. The trial court affirmed the Board’s findings. We find no error in either decision.
Accordingly, we affirm the trial court judgment.
AFFIRMED.

. Dr. Reynolds does not question the severity of the punishment imposed. It is not germane to the issues in this appeal that each and every condition of probation be recited.

. Dr. Reynolds was specifically charged with and found guilty of violating La.R.S. 37:1285(A)(6) and (14).