|2PARRO, Judge.
This is an appeal by Dr. Kathleen C. Quinn (“Dr.Quinn”) from the district court’s affir-mance of an administrative ruling by the Louisiana Licensed Professional Counselors Board of Examiners, suspending Dr. Quinn’s license to practice for one year.
STATUTORY AUTHORITY
The Louisiana Professional Counselors Board of Examiners (“the Board”) is a statutorily-created entity within the Louisiana Department of Health and Hospitals. LSA-R.S. 37:1104. The Board was created for the purpose of regulating the activities of persons who render mental health counseling services to the public. LSA-R.S. 37:1102. It has the authority to license mental health counselors and may also take disciplinary action against licensed counselors, including revoking or suspending any license issued by it. LSA-R.S. 37:1105(E). Pursuant to the mandate of LSA-R.S. 37:1105(D), the Board adopted the Code of Ethics of the American Counseling Association. It also adopted rules and regulations, the latest revision of which can be found in Volume 18, No. 1, pp. 51-54 of the Louisiana Register, published January 20, 1992. These rules set out the procedures to be followed by the Board when disciplinary hearings are held. A violation of the code of ethics adopted by the Board may result in a license suspension or other disciplinary action. LSA-R.S. 37:1110. Any person aggrieved by a ruling of the Board may appeal to the district court for the parish of East Baton Rouge. LSA-R.S. 37:1105(E).
The district court conducts its judicial review pursuant to LSA-R.S. 49:950, et seq., the Administrative Procedure Act (“APA”). That review is confined to the record, but upon request, the court shall hear oral argument and receive written briefs. LSA-R.S. 49:964(F). The agency decision can only be reversed or modified by the reviewing court if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
13(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of [sic] the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
LSA-R.S. 49:964(G).
FACTS AND PROCEDURAL HISTORY
In late 1992 and early 1993, the Board received several complaints concerning Dr. Quinn. The gist of these complaints was that Dr. Quinn violated ethical standards by engaging in “dual relationships” with several patients who allegedly were employed by her during the time they were receiving counseling from her.[1] One complaint also alleged *301 Dr. Quinn advertised and represented to clients and the Board that she held a doctoral degree for some years prior to actually receiving that degree in 1993.[2]
Lin accordance with its rules, the Board sent Dr. Quinn a series of “show cause” letters by certified mail, summarizing the complaints and inviting her to respond. Dr. Quinn only responded to the first of these letters, and the Board’s later efforts to have certified letters delivered to her at addresses on file with the Board were unsuccessful. Dr. Quinn claimed she received only the first of these letters and did not know of the additional charges until told about them when she attempted to renew her license in early 1994. At that time, Dr. Quinn consulted an attorney. He wrote to the Board, requesting additional information and asking for time to gather documents and prepare a response. He did not receive the requested information and the Board did not receive specific responses to the last three “show cause” letters.
In a letter dated May 24, 1994, the Board notified Dr. Quinn, through her attorney, that a hearing “relative to allegations of professional misconduct and violations of the Louisiana Licensed Professional Counselors Code of Ethics” would be convened June 24, 1994. The notice specified which statutes and rules were allegedly violated and summarized the charges. On June 22, 1994, her attorney hand-delivered a letter to Patrick M. Amedee (“Mr.Amedee”), the Board’s attorney, asking for a continuance of the hearing because of his participation in a previously scheduled trial, as a result of which he would be unable to attend the hearing, and also because he was still awaiting additional documents concerning Dr. Quinn’s doctoral degree.[3] When the Board convened for the hearing, it decided to deny the continuance because the request came so late and witnesses would be inconvenienced.
The Board went forward with the hearing, although neither Dr. Quinn nor her attorney were present. As the Board’s attorney, Mr. Amedee entered into the record certain documents gathered as part of the Board’s investigation. He also acted as hearing officer, advising the Board about jurisdictional questions, ruling on the admissibility of evidence, and offering opinions concerning the relevance of certain |stestimony. After hearing the witnesses against Dr. Quinn and reviewing the documentary evidence, the Board scheduled a second hearing for July 8, 1994, so Dr. Quinn and her attorney could appear. A transcript of the first hearing was provided to them. Dr. Quinn, her attorney, and her witnesses participated in this second hearing and presented evidence and testimony refuting the claims. Mr. Amedee again served as hearing officer.
The Board considered information from both hearings in concluding Dr. Quinn had violated the ethical standards, as alleged. The Board decided the violations justified a one-year suspension of Dr. Quinn’s professional license.
*302 Dr. Quinn petitioned for judicial review of this ruling. The district court judge reviewed the record from the administrative hearing, accepted briefs from both parties, and heard oral argument, after which he affirmed the ruling of the Board. Enforcement of the license suspension was stayed, pending the disposition of Dr. Quinn’s appeal to this court.
ARGUMENTS
Dr. Quinn urges this court to find the conclusions of the Board were manifestly erroneous, and therefore should not have been affirmed by the district court. However, most of her arguments address the procedures used by the Board, which she claims deprived her of a fair hearing in violation of her constitutional right to due process. The procedural problems she points out include: (1) she had less than thirty days notice of the hearing; (2) the Board unreasonably denied her attorney’s request for a continuance; (3) the initial hearing was conducted when neither she nor her attorney were present; (4) there was no opportunity for her to cross-examine the witnesses who testified against her; (5) the hearing officer allowed witnesses to testify about totally irrelevant matters, some of which occurred before Dr. Quinn was licensed and indeed, before the Board was statutorily constituted, and; (6) the Board improperly combined the investigative, pros-ecutorial, and judicial functions by allowing its attorney to serve as the administrative hearing officer for the hearings.
| (¡Concerning the merits of the complaints, the Board argues there is a reasonable factual basis in the record for its findings, some of which were based on the credibility of witnesses, and these factual findings justify the disciplinary action imposed by it in the exercise of its discretion. The Board also claims the hearing process it followed was fair in every respect. It contends Dr. Quinn had numerous opportunities to respond to the charges, and only after she faded to do so was the hearing convened. Given that over a year had elapsed since Dr. Quinn was made aware of the initial complaint, the thirty days notice was reasonable, and her attorney’s last-minute request for a continuance was not reasonable. The Board argues Dr. .Quinn could have attended the initial hearing, and she and her attorney were provided with a copy of the transcript so they could prepare for the second hearing. Neither she nor her attorney asked the Board to subpoena the witnesses from the first hearing to appear for the second hearing, which would have made them available for cross-examination. The Board contends it based its decision only on activities which occurred in connection with Dr. Quinn’s stated credentials and on her actions after she was licensed; testimony about previous acts and irrelevant matters was not considered.
The Board acknowledges Mr. Amedee served both as its general counsel and as the administrative hearing officer, but states he did not act as its advocate or as a prosecutor during the hearings. It contends his advice and counsel to the Board during the hearings was strictly as an advisor on evidentiary and jurisdictional issues, which is the proper function of a hearing officer. It notes Mr. Amedee admonished witnesses to confine their testimony to the stated charges. The Board further points out Mr. Amedee did not participate in its deliberations and did not vote on any of the substantive issues in the ease. At oral argument, the Board’s counsel acknowledged that Mr. Amedee assisted in the preparation of the letter to Dr. Quinn that explained its findings of fact and its decision.
ANALYSIS
Both parties cite the United States Supreme Court case of Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), which upheld the combination of ^investigative and judicial functions within an agency against a due process challenge. In that ease, an agency with licensing authority over a dentist conducted an investigation into possible statutory violations. It then scheduled an adversary hearing to determine whether to temporarily suspend his license, and he sought to enjoin this hearing on due process grounds. The Supreme Court reversed the lower court’s granting of an injunction and held the combination of investigative and adjudicative functions did not, *303 without more, constitute a due process violation. Withrow, 421 U.S. at 58, 95 S.Ct. at 1470 (emphasis added). Although the court noted there may be special facts and circumstances justifying a finding that the risk of unfairness is intolerably high, it did not attempt to describe or limit what those situations might involve. Id.
Many Louisiana cases have addressed similar challenges to the procedures used by administrative agencies; three have particular application to the facts of this case. In Allen v. Louisiana State Bd. of Dentistry, 543 So.2d 908 (La.1989), the Louisiana Supreme Court found a violation of due process occurred because the board’s attorney functioned in multiple capacities. The attorney investigated the charges brought against a dentist by certain former employees, as a result of which formal charges were brought. At the administrative hearing, the attorney acted as prosecutor for the board. He did not participate in its deliberations, played no role in the board’s decision on the ultimate issue with respect to the charges, and did not fix the penalty. However, when the board reached its decision, he drafted the formal findings of fact and conclusions. In a strongly worded decision, the court stated:
[The attorney’s] involvement in drafting the opinion of the committee renders the decision infirm on both statutory and due process grounds.... His contact with the decision maker was not limited or inconsequential. Indeed, by drafting the committee’s findings and conclusions, [he] put himself in the position of the adjudicator.
ifc ^
In light of the substantial powers given to administrative bodies, the courts must be vigilent (sic) in assuring that parties in administrative adjudications receive the procedural protections our law affords. As we held above, [the attorney’s] dual role as prosecutor and factfinder violated Allen’s right to a neutral adjudicator. In addition, however, this commingling of functions violated Allen’s right to a hearing that is both fair and that has the appearance of fairness, and his right to meaningful judicial review.
I * sfc * * * _Li.
In short, we find the commingling of pros-ecutorial and adjudicative functions violates both the letter of the Louisiana Administrative Procedure Act and the due process goals it is designed to further.... The idea of the same person serving as judge and prosecutor is anathema under our notions of due process.
Allen, 543 So.2d at 914-916.
This court, in Ogg v. Louisiana Bd. of Chiropractic Examiners, 602 So.2d 749 (La.App. 1st Cir.1992), found no statutory or constitutional due process violation occurred merely because the prosecuting attorney for the board was also the board’s general counsel. The court noted there were no allegations of specific conduct on the part of the board or its attorney impugning the fairness of the proceedings. A key factor distinguishing Ogg from Allen was that the formal hearings were conducted by a hearing officer who had no connection with the prosecutor. The court stated,
The hearing officer rules on objections; after the hearing he prepares written findings of fact and conclusions of law which are either accepted, rejected or modified by the Board itself.
Ogg, 602 So.2d at 751.
This court recently held that when the agency’s attorney served as investigator, prosecutor, and author of the draft of an administrative decision, an unacceptable threat to the accused’s right to a fair hearing occurred. In re Georgia Gulf Corp., 95-1694 (La.App. 1st Cir. 6/28/96), 676 So.2d 1187, writ granted, 96-1907 (La.10/4/96), 679 So.2d 1363. Although noting the combination of prosecutorial and adjudicatory roles was not a per se violation of due process, the court found the attorney’s roles
were so intimately intertwined as to make them practically interchangeable. This commingling of separate and independent functions is the antithesis of the very purpose of the due process goals.
In re Georgia Gulf Corp., 676 So.2d at 1191.
The court also noted this combination of separate roles rendered meaningful judicial review impossible, particularly when credibil *304 ity determinations were involved, because the reviewing court would not be able to ascertain whether those determinations were the product of the board’s deliberations or were merely the attorney’s conclusions. Additionally, even though the written findings were provided to the accused before the |9final decision of In re Georgia Gulf Corp. was rendered by the agency, the court found this did not cure the procedural deficiencies.
The record in this case supports the Board’s position that Mr. Amedee attempted to be fair to Dr. Quinn. He did counsel witnesses to stay within the bounds of the charges when giving their testimony. However, this advice often occurred after much extraneous and totally irrelevant testimony had been adduced. Also, although a Board member questioned the propriety of doing so, Mr. Amedee allowed testimony and documents concerning events which occurred many years before 1987, when the Board was created, and 1988-89, when Dr. Quinn was licensed.[4] Contrary to the Board’s arguments, this testimony and these documents were specifically referenced in the Board’s findings as justification for its conclusions.
It was due to Mr. Amedee’s efforts to provide Dr. Quinn with a chance to address the charges that the Board decided to schedule the second hearing when she and her attorney could appear. However, by allowing the first hearing to proceed in their absence, the chance to object to irrelevant testimony and conduct meaningful cross-examination was lost. Also, because no one was present to request sequestration of the witnesses, they were allowed to remain in the hearing room and could hear one another’s testimony.
The Board’s rules concerning adjudicatory hearings for the purpose of denial, revocation, or suspension of a license clearly state:
An opportunity shall be afforded all parties to respond and present evidence in (sic) all issues and facts involved and arguments on all issues of law and policies involved and to conduct such cross-examination as may be required for a full and true disclosure of the facts.
La. Admin. Code 46:1301(B)(3), published in 18 La. Reg. 52 (1992). This court is unimpressed with the Board’s arguments that Dr. Quinn could have appeared without her attorney at the first hearing or asked the Board to subpoena those witnesses for the second hearing. The Board’s rules clearly envision the participation of the licensee’s Illegal counsel in adversarial hearings.[5] Knowing Dr. Quinn was represented by counsel and would not expect the hearing to be conducted when her attorney could not be present, the Board should have continued the hearing under the circumstances of this case. Much irrelevant and prejudicial information was provided by the witnesses because no one representing Dr. Quinn’s interests was at the first hearing to object to it and the hearing officer did not preclude it. Even if the witnesses had been subpoenaed for the second hearing, without the opportunity for contemporaneous cross-examination, their unchallenged testimony would still have remained in the minds of the Board members.
More significantly, the Board’s rules concerning the format for adversarial hearings require:
An assistant attorney general shall assist the board’s chair and rule on matters of evidence and procedure.
La. Admin. Code 46:1301(D)(3)(d)(i), published in 18 La. Reg. 52 (1992). This provi *305 sion clearly envisions the use of an impartial person, an assistant attorney general, to function in the role of hearing officer. The purpose of such a provision is to ensure the fairness of the adversarial hearing. When questioned about this rule at oral argument, the Board’s counsel advised that because Dr. Quinn and her attorney were not going to appear at the first proceeding, the Board felt it was unnecessary to have an assistant attorney general present because the proceeding would be investigatory, rather than adversarial. However, Mr. Amedee again functioned as Board counsel and hearing officer at the second proceeding. If counsel’s argument is accepted, the absence of an assistant attorney general as hearing officer indicates neither proceeding was adversarial; therefore neither was sufficient for the disciplinary action taken. Such Inaction requires an adversarial hearing, which is not accomplished by holding and combining information from two non-adversarial proceedings.
In addition to the procedural shortcomings already discussed, Mr. Amedee’s assistance in drafting the findings of fact and decision of the Board mandates our conclusion that the Board’s action should not have been upheld by the district court. Louisiana jurisprudence is very clear that this commingling of roles constitutes unlawful procedure in the conduct of an agency adjudication. An agency decision which affects substantial rights, such as Dr. Quinn’s professional license, must be reversed if those rights are prejudiced by the use of unlawful procedures. LSA-R.S. 49:964(G). And because the hearing process was so tainted, the record created there cannot be the basis of a reviewing court’s opinion on the merits of this ease. The proceedings already conducted by the Board can serve only the function of non-adversarial, or “show cause” hearings. Dr. Quinn has the right to a fair adjudication at which her rights are protected; the Board has a right to convene an adversarial hearing to consider the complaints brought against her. Accordingly, remand for such a hearing is appropriate.
CONCLUSION
Administrative agencies such as this Board have broad powers affecting significant rights of the persons whose professional licenses and practices they control. Although the law allows some blurring of the distinctions between investigatory, prosecutorial, and adjudicatory functions, those distinctions cannot be totally abandoned, even with the best of intentions. When this occurs and basic procedural safeguards are ignored, the tribunal loses the appearance of fairness and impartiality required by due process. See Ogg, 602 So.2d at 754 (Carter, J., specially concurring).
The judgment of the district court, affirming the ruling of the Board that suspended Dr. Quinn’s license for one year, is reversed. The case is remanded to the Board for a new adversarial hearing. All costs of this appeal and the judicial review in the district court, in the amount of $521, are assessed against the Board.
REVERSED AND REMANDED.

. The code of conduct provision at issue in these complaints states:
When the counselor has other relationships, particularly of an administrative, supervisory, and/or evaluative nature with an individual seeking counseling services, the counselor must not serve as the counselor!,] but should refer the individual to another professional. Only in instances where such an alternative is unavailable and where the individual's sitúa *301 tion warrants counseling intervention should the counselor enter into and/or maintain a counseling relationship. Dual relationships with clients that might impair the counselor’s objectivity and professional judgment (e.g., as with close friends or relatives), must be avoided and/or terminated through referral to another competent professional.
La. Admin. Code 46:2105(N), published in 15 La. Reg. 623-24 (1989).

. This action allegedly violated two provisions of the code of conduct, as follows:
The counselor neither claims nor implies professional qualifications exceeding those possessed and is responsible for correcting any misrepresentations of these qualifications by others.
La. Admin. Code 46:2103(D), published in 15 La. Reg. 622 (1989).
The counselor is required to have available for each client a declaration of practices and procedures statement following the outline as approved by the board (see Appendix). Such declarative information must not contain false, inaccurate, misleading, partial, out-of-context, or deceptive material or statements.
La. Admin. Code 46:2113(C), published in 15 La. Reg. 626 (1989).

. In briefs and at oral argument, Dr. Quinn's attorney stated he contacted Mr. Amedee when he received notice of the hearing date and told him he had a potential conflict with a previously scheduled trial the week of June 21, 1994. He further stated Mr. Amedee assured him the Board would work with him to accommodate his schedule.

. The precise date when Dr. Quinn was licensed is not in the record, but the Board member who questioned whether earlier acts should be considered referred to 1988-89 as Dr. Quinn's license date.

. Although there is no "right to counsel” in the Board's rules, the format for adversarial hearings includes participation by the licensee's attorney in opening statements, cross-examination, and closing arguments. La. Admin. Code 46:1301(D)(3)(c), published in 18 La. Reg. 53 (1992). In contrast, the format for a “show cause hearing” does not include participation by a legal representative and states that if the applicant chooses to have counsel present, counsel's role shall be advisory only and will not include addressing the Board or questioning witnesses. La. Admin. Code 46:1301(D)(4), published in 18 La. Reg. 53 (1992). This distinction between the two kinds of hearings implicitly recognizes the importance of legal counsel for a licensee facing disciplinary action.