592 So.2d 1374 (1992)
Ronald CANNATELLA
v.
DEPARTMENT OF CIVIL SERVICE.
No. 91-CA-0933.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 1992.
Rehearing Denied February 12, 1992.
Writ Denied April 10, 1992.
*1375 Frank G. Desalvo, New Orleans, for plaintiff/appellant.
Ralph D. Dwyer, Jr., New Orleans, for defendant/appellee.
Before BARRY and WARD, JJ., and GULOTTA, J. pro tem.
BARRY, Judge.
Sgt. Ronald Cannatella appeals his 30 day suspension without pay from the New Orleans Police Department based on the New Orleans Civil Service Commission's ruling that he engaged in prohibited political activities.
On January 18, 1991 Sgt. Cannatella was notified by a letter from Superintendent of Police Warren Woodfork, Sr. that he was suspended from duty. The letter relied on a Civil Service Commission conclusion that Sgt. Cannatella violated La. Const. art. X, § 9 and City Civil Service Rule XIV. That *1376 ruling was based solely on a joint stipulation of facts entered into by Sgt. Cannatella and the Civil Service Commission.
The stipulation provides that Sgt. Cannatella is a classified civil service employee and president of the Police Association of New Orleans (PANO). The stipulation states that:
[d]uring and around January of 1990, ... PANO ... decided to endorse a candidate for Mayor. Pursuant to that decision, a poll of the membership of PANO was taken and that poll supported an endorsement of Donald Mintz. Sgt. Cannatella, the President of PANO, took the following steps to make that endorsement public: (a) Sgt. Cannatella appeared in a public forum, covered by the print and broadcast news media, and stated PANO's endorsement of Donald Mintz; (b) Sgt. Cannatella's public statement of PANO's endorsement included statements videotaped by local television news [on January 9 and 10, 1990] ...; (C) Sgt. Cannatella's statement was reported in a newspaper article from the New Orleans Times-Picayune dated January 10 [and 12], 1990.... (emphasis added).
Importantly, the stipulation provides that Sgt. Cannatella was acting "pursuant to what he believed was a function of his position as the President of PANO." Videotapes of the television endorsements and copies of the newspaper articles are attached to the stipulation.
La. Const. art. X, § 9 provides in pertinent part that "[n]o ... employee in the classified service shall participate or engage in ... an effort to support or oppose the election of a candidate for political office or to support a particular party in an election." City Civil Service Rule XIV provides that "[c]onduct prohibited to classified employees and commissioners by this Rule includes any public political statement, whether verbal or written, any public political overture or demonstration or any connection with public representation or reproduction having political significance including, but not limited to, badges, emblems, posters, stickers, etc., which may or may not feature insignia, logo or the like having political characteristics easily discernible or identifiable with political parties, factions, candidates or office holders." Private expressions of opinion by classified civil service employees are specifically exempted.
The prohibition against political activity is exclusively limited to commissioners and classified civil service employees and officers. That prohibition does not extend to a labor organization such as PANO, or its spokesperson, merely because its members are classified civil service employees.
PANO is an entity which is distinct and distinguishable from its members. An endorsement of a candidate for elective office by PANO through its president is not a personal endorsement of that candidate by Sgt. Cannatella. The stipulation clearly shows that Sgt. Cannatella publicly expressed PANO's endorsement for mayor, not his personal choice. Any statement made by Sgt. Cannatella during a PANO meeting is a private expression of his opinion which is specifically exempt from the constitutional prohibition. Civil Service Commission v. PANO, 90-C-0769, writ granted (La.App. 4th Cir.1990).
We conclude that Sgt. Cannatella's conduct as president of PANO does not fall within the ambit of political activities proscribed by either art. X, § 9 or City Civil Service Rule XIV.
Sgt. Cannatella also argues that he was suspended without legal cause. A permanent classified city civil service employee cannot be disciplined by his employer except for cause expressed in writing. La. Const. art. X, § 8. La.R.S. 33:2561. Legal cause exists if the employee's conduct impairs "the efficiency of the public service" and bears "a real and substantial relation to the efficient operation of the *1377 public service in which the employee was engaged." Noel v. Dept. of Sanitation, 490 So.2d 498, 500 (La.App. 4th Cir.1986) (interpreting "cause" under La. Const. art. X, § 8). City of Westwego v. McKee, 448 So.2d 166 (La.App. 5th Cir.1984) (concluding "cause" under La.R.S. 33:2561 is synonomous with legal cause). The appointing authority bears the burden of proving legal cause by a preponderance of the evidence. Id.
The Commission failed to determine whether Sgt. Cannatella's alleged misconduct had an adverse effect on the police department. No evidence was presented on that issue.
We note that the Commission initiated the investigation and then prompted the appointing authority to take disciplinary action-a reversal of the usual roles. Normally the Commission functions as a reviewing agency to consider appeals from the appointing authority's disciplinary action. The Commission acts as a quasi judicial body by holding hearings wherein the appointing authority has the burden of proof to show that the action was taken for "cause". Unquestionably, the Commission has other powers, and Art. 10, Sec. B gives the Commission the power to investigate violations of rules which may be adopted pursuant to Sec. A, including rules that may regulate political activities.
However, the granting of investigatory powers and judicial powers presents a problem which requires a fresh look at its dual role because obviously, if there is a thorough investigation, and if the Commission decides to hold a hearing, the determination that a hearing is justified almost certainly means the outcome is a foregone conclusion. We are aware that several appellate decisions have approved that procedure, but those decisions were grounded on the view that there was a full right to appeal the law and facts to an appellate court. Since those decisions, other cases have severely limited the appeal of facts and appellate courts routinely defer to the Commission's finding of facts, reversing only if manifestly erroneous. As a consequence, when the Commission initiates an investigation it effectively levels a charge and decides whether that charge occurred. When an appellate court defers to those findings of fact, there is at the very least an appearance that an employee has been denied a fair and impartial hearing. If the Commission initiates an investigation, another forum should be the impartial arbitrator.
The ruling of the Civil Service Commission is reversed. The Civil Service Commission is ordered to remove the record of Sgt. Cannatella's suspension from his file, and that a copy of this judgment be forwarded to:
Dept. of Civil Service,
Office of Municipal Investigations,
NOPD Personnel Office,
Field Operations Bureau,
NOPD Pension Board,
NOPD Credit Union,
Commander Second Division,
Internal Affairs Division
REVERSED.
WARD, J., agrees with the result and dissents in part.
GULOTTA, J., dissents with written reasons.
WARD, Judge, agrees with the result and dissents in part.
I disagree with that part of the opinion which holds that an appointing authority must show that the employee conduct impaired the efficiency of the government agency.
A classified employee cannot be subjected to disciplinary action except for cause expressed in writing. La. Const. of 1974, Art. 10, Sec. 8. Appellate decisions that have held that there is no "legal cause" unless the conduct "impairs the efficiency of the service" and "bears a real and substantial *1378 relation to the efficient operation of the public service in which the employee was engaged" have placed an undue, unwarranted, and sometimes irrational burden on the appointing authority, as in this case where the conduct of Officer Cannatella may well have enhanced the efficiency of the service. Moreover, appellate decisions cannot require more than required by the Constitution which means only "cause" need be shown. The appointing authority in this case alleged cause by charging that Officer Cannatella engaged in prohibited political activity, and the authority did not have to prove that Cannatella's activity impaired the efficiency of the police department.
I agree with the other holdings and the result.
JAMES C. GULOTTA, Judge Pro Tem., dissents with written reasons.
I respectfully dissent.
As pointed out in the majority opinion, Louisiana Constitution Article 10 Section 9 provides, in pertinent part, that no employee in the classified service shall participate or engage in political activity. Subparagraph "C" of that section defines political activity as any effort to support or oppose the election of a candidate for political office. An exception to the prohibition is that an employee may exercise his right as a citizen to express his opinion privately.
Consistent with that Constitutional provision, City Civil Service Commission Rule XIV prohibits political activity on the part of an employee in the classified service. Political Activity is defined under the Civil Service Rule as follows:
2.1 Political activity means an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election.
2.2 Conduct prohibited to classified employees and Commissioners by this Rule includes any public political statement, whether verbal or written, and public political overture or demonstration or any connection with public representation or reproduction having political significance including, but not limited to, badges, emblems, posters, stickers, etc., which may or may not feature insignia, logo or the like having political characteristics easily discernible or identifiable with political parties, factions, candidates or office holders.
The permissible activity under the rule allows an employee to exercise the right of any citizen to express political views or opinions privately.
A consideration of the Constitutional provision and Civil Service Commission Rule leads to a determination that these prohibitions are all inclusive.
Irrespective of the stipulation in the instant case, I have difficulty reaching a result that Cannatella's public endorsement in a public forum covered by the print and broadcast news media announcing PANO's endorsement of a candidate for mayor does not violate the Constitution and the Civil Service Rule.
It is of no moment whether the public endorsement was the result of a poll by PANO or any other organization. I find no difference between a public announcement of the results of a poll of PANO, a labor organization, or any other organization styled as a civic, social, uptown or downtown group.
The purpose of the Constitutional provision and the Civil Rule is to protect the integrity of Civil Service employees by prohibiting involvement in politics and political activities. I find Cannatella's announcement to be a clear violation of both the Constitution and the Rule.
Accordingly, I respectfully dissent.

APPLICATION FOR REHEARING DENIED
Because LSA-Const. of 1974 art. V, § 8, subpar. B provides that in civil matters *1379 only when a judgment of a district court is to be modified or reversed and one judge dissents, the case shall be reargued before a 5 judge panel, we feel compelled to vote to deny the application for rehearing.

ON APPLICATION FOR REHEARING
PER CURIAM.
Implicit in the reversal is the finding that the Civil Service Commission was manifestly erroneous, even though those two magical words weren't in the opinion.
REHEARING DENIED.