665 So.2d 1288 (1995)
Kenneth Don EARLES
v.
STATE BOARD OF CERTIFIED PUBLIC ACCOUNTANTS OF LOUISIANA.
No. 95-CA-0505.
Court of Appeal of Louisiana, Fourth Circuit.
December 14, 1995.
Writ Denied March 8, 1996.
*1289 Alan D. Ezkovich, Sharon Cormack Mize, Sessions & Fishman, L.L.P., New Orleans, and Donald B. Verrilli, Jr., and Steven N. Berk, Jenner & Block, Washington, D.C., for Plaintiff.
Robert J. Conrad, Jr., Adams and Reese, New Orleans, for Defendant.
Christopher M. Guidroz and Charles C. Coffee, Simon, Peragine, Smith & Redfearn, New Orleans, Amicus Curiaethe Society of Louisiana Certified Public Accountants.
Before LOBRANO, ARMSTRONG and WALTZER, JJ.
ARMSTRONG, Judge.
This is an action for judicial review of a decision of the State Board of Certified Public Accountants of Louisiana ("the Board"). Petitioner Don Earles is a certified public accountant ("CPA") and also a securities broker. The Board is a state agency which regulates CPA's. See La.R.S. 37:71-88. See generally Accountants' Ass'n of Louisiana v. State, 487 So.2d 155 (La.App. 4th Cir.1986). The Board has promulgated Rules of Professional Conduct, pursuant to its statutory authority, La.R.S. 37:75. B(2), which CPAs must follow. The Board decision at issue found that Mr. Earles was violating the rule on "incompatible occupations," La.Admin.Code 46: XIX. 501(E), by representing the same clients as both a CPA and a commission-compensated securities broker.
Mr. Earles brought this action for judicial review of the Board's decision. The facts are uncontested and, in particular, the parties agree that Mr. Earles does represent some of the same clients as both a CPA and as a commission-compensated securities broker. However, the trial court found that the Board's decision was erroneous and vacated it. We find that, under the standards for judicial review of an administrative agency action, La.R.S. 49:964. G, the Board committed no reversible error and so we reinstate the Board's decision. We note that there appear to be no previous reported decisions addressing the Board's "incompatible occupations" rule, so the trial court had no case law to follow. Hopefully, this present opinion will provide some guidance for future cases involving the Rule.
Mr. Earles argues that the Board's decision should be vacated because the decision was made in excess of the Board's statutory authority and because the decision was arbitrary and capricious or an abuse of discretion. *1290 The Administrative Procedure Act provides, in pertinent part, that:
The court may reverse or modify the decision [of the agency] if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
* * * * * *
(2) In excess of the statutory authority of the agency;
* * * * * *
(5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion [.]
La.R.S. 49:964. G(2) and (5).
The Board derives its authority to adopt and enforce its Rules of Professional Conduct from the Public Accountancy Law which states in pertinent part:

The Board may:
* * * * * *
(2) Adopt and enforce all rules and regulations, bylaws, and rules of Professional conduct as the board may deem necessary and proper to regulate the practice of public accounting in the state of Louisiana [.]
La.R.S. 37:75. B(2) (emphasis added).
The Board's "incompatible occupations" Rule states in pertinent part:
A licensee shall not concurrently engage in the practice of public accountancy and in any other business or occupation which impairs his independence or objectivity in rendering professional services[.]
La.Admin.Code 46: XIX. 501(E) (emphasis added).
Mr. Earles' brief expressly concedes that the Board did not act improperly in adopting its "incompatible occupations" Rule. He challenges only the Board's application of the Rule to him.
The Board's decision is entitled to a strong presumption of validity because of the Board's accounting expertise. Wilcox v. Louisiana State Board of Medical Examiners, 446 So.2d 502, 506 (La.App. 4th Cir. 1984); Fisher v. Louisiana State Board of Medical Examiners, 352 So.2d 729, 732 (La. App. 4th Cir.1977), writ denied, 353 So.2d 1338 (La.1978). Also, as a matter of common sense, the Board's interpretation of its own Rule is entitled to at least some deference. Cf., eg., Chevron, U.S.A. v. N.R.D.C., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (deference to agency's interpretation of ambiguous statute it administers).
The Board's very detailed written opinion makes it clear that the Board was concerned that Mr. Earles' serving a client as a commission-based securities broker creates a conflict-of-interest as to Mr. Earles' serving the same client as a CPA. A CPA must exercise professional judgment as to the financial affairs of a client. That professional judgment must not be affected, not even subconsciously, by the prospect of financial gain to the CPA. If the CPA is receiving commissions on the financial transactions of the client (in this case, securities transactions) then there is the potential, or at least the appearance, that the CPA's judgment as to the client's financial affairs could be affected by the CPA's self-interest. To use a crude example, if the CPA, as a commission-compensated securities broker, had a tax-sheltered security available to sell to the client, and the CPA was giving the client tax-planning advice as a CPA, there could never be certainty that the tax-planning advice was unaffected by the possibility of a commission on the client's purchase of the tax sheltered security.
The Board's decision describes the issue as one of "professional objectivity" of the CPA and then reasons:
While independence may not be a necessary characteristic of all accountant-client relationships, professional objectivity is. Rule 501(E), thus, deals not only with other pursuits which may impair independence but also with non-accounting businesses and occupations which may impair objectivity. In doing so, the rule proscribes a concurrent activity which gives rise to a conflict of interest in serving the client; it requires abstention from any other business or interest which would actually or potentially affect the CPAs impartial and objective judgment on behalf of the client. It is our opinion that concurrent service of a client as a certified public *1291 accountant and securities broker falls into this category, clearly bearing the potential for impairment of objectivity even when accounting services are limited to compilation of financial statements, general bookkeeping and tax return preparation and advice. As the Board's Executive Director noted in advising Mr. Earles some two years ago, given such a dual relationship, "[i]t simply could not be said that the CPA's judgment ... was impartial and objective when such advice [might] determine whether or not the CPA was to receive brokerage commissions."
Board Decision August 23, 1990 at 6 (footnotes, citations omitted).
Mr. Earles' brief points out the distinction between a CPA's audit and other "attest" services, by which the CPA provides services in connection with the client's financial statements which are to be furnished to or used by third parties, and "non-attest" services which involve only the CPA and client and not third parties. Mr. Earles' brief asserts that CPA "independence" from the client is necessary to audit and other attest services but not to non-attest services such as tax return preparation, investment advice and financial statement compilations (not audited) and bookkeeping services. However, the above-quoted portion of the Board's decision found not only independence (from the client), but also "objectivity" (to the client), to be a concept addressed by the "incompatible occupations" Rule. The Board also stressed that objectivity was necessary for non-attest CPA services. In any event, Mr. Earles' brief expressly concedes: "Earles, however, recognizes the need to maintain objectivity while performing non-attest services for his clients." (emphasis in original).
Mr. Earles argues that the Board's decision "had no basis in fact." By this, Mr. Earles is not arguing that the Board erred in finding the evidentiary facts. Indeed, the evidentiary facts are undisputed. Rather, Mr. Earles is arguing that the undisputed facts do not support a conclusion that his objectivity could be impaired. In support of this contention, he discusses each of the three areas of his CPA practice.[1]
First, Mr. Earles' brief states that he provides, as a CPA, tax return preparation services. He asserts that his objectivity as a CPA preparing tax returns could not be impaired by his role as a commission-compensated securities broker. But, of course, due to the complexities of taxation, the CPA's services in tax return preparation are not merely mechanical but require the CPA's professional judgment. We have, above, with our example of the possible sale of a tax-sheltered security, suggested that a CPA's professional judgment as to taxation could be affected by his self-interest as a commission-compensated securities broker. More generally, we note the well-known fact that tax consequences are important to many securities investments and that, conversely, the tax advice of a CPA must take into account the client's existing and potential securities investments.
Second, Mr. Earles' brief states that, as a CPA, he provides "investment advisory services" to clients. He then asserts that "there is no basis for concluding that the acceptance of commissions for the sale of securities threatens to impair Earles' objectivity in connection with providing his clients with investment advice." However, if Mr. Earles might gain a commission if his client invests in securities sold by Mr. Earles, then of course Mr. Earles' investment advice (given as a CPA) could be affected. Nothing is more likely to raise a question as to the objectivity of investment advice than the prospect that the advisor will receive a commission, or not, depending on the client's investment decision.
Third, Mr. Earles' brief states that, as a CPA, he compiles financial statements (not audited) for clients and "carries out various bookkeeping tasks" as to his clients' financial records. And, he asserts, his objectivity in providing those CPA services could not be affected by his dealing with the client as a commission-compensated securities broker. However, those compiled financial statements, and those client financial records, will *1292 necessarily reflect and be affected by the client's securities investments. Moreover, if Mr. Earles is using his skills and knowledge as a CPA to perform these services, then they are not necessarily limited to mechanical functions but could include the exercise of professional judgment. For example, in exercising professional judgment as to how to present the profit or loss on or value of a securities investment, which will create a particular appearance as to the success or not of the securities investment, the CPA's professional judgment could be affected by the fact that the CPA sold the securities investment to the client and might hope to sell more securities investments to the client in the future.
Of course, as to any of the three areas of Mr. Earles' practice, reasonable minds might differ as to whether Mr. Earles' objectivity as a CPA could be impaired by his service of the same client as a commission-compensated securities broker. However, the issue is whether the Board, whose decision is entitled to a presumption of validity because of its accounting expertise and because it is applying its own Rule, acted in excess of its statutory authority or was arbitrary and capricious or abused its discretion in deciding that Mr. Earles' objectivity as a CPA could be impaired. La.R.S. 49:964. G(2) and (5). Moreover, as shown by the above discussions of each of Mr. Earles' three practice areas, a rational analysis could lead the Board to the reasonable conclusion that Mr. Earles was violating the Board's "incompatible occupations" Rule 501(E). Because the Board's analysis is rational and its conclusion reasonable, its decision should not be vacated on judicial review.
Mr. Earles raises a few other points which can be dealt with briefly. He points out that the Board found that he did not, by accepting commissions on the sale of securities, violate rule 501(c). He then suggests that it is illogical to find a violation of Rule 501(E), the "incompatible occupations" Rule, if there is no violation of Rule 501(c). However, Rule 501(c) states: "A license [CPA] shall not pay a commission to obtain a client or accept a commission for a referral to a client of products or services of others." The Board ruled that Rule 501(C) "is breached only when a CPA, acting as a CPA and providing accounting-related services, receives a commission for directing an accounting client to the products or services of another person or firm." The Board's limitation of its own Rule 501(C) appears reasonable as Rule 501(C) seems to be directed primarily at kickbacks, fee-splitting and analogous acts. Thus, the two rules deal with different conduct and issues and we can see no reason that a finding of no violation of Rule 501(C) in this case would preclude a finding of a violation of Rule 501(E).
Mr. Earles asserts that the Federal Trade Commission, the American Institute of Certified Public Accountants and the National Association of State Boards of Accounting "have also taken the view that accepting commissions, outside the audit and attest area, does not impair a CPA's objectivity." Actually, the sources relied upon by Mr. Earles for the just quoted-statement, an FTC consent decree with the AICPA, In re AICPA, No. 3297 (FTC Jul. 26, 1990), and a June 12, 1987 letter by the FTC to the NASBA, show only that the FTC, not the AICPA or the NASBA, is of the view that acceptance of commissions by a CPA in a non-audit non-attest area is not per se impermissible. Also, the NASBA may have amended Rule 103 of its Model Rules of Professional Conduct, to make CPA's receipt of commissions outside the audit and attest areas not per se impermissible, under threat of litigation by the FTC. In any case, the short answer to this argument is that we are reviewing the Board's decision which applied the Board's Rule, and the Board is not bound by the consent decrees, letters, model rules etc. of the FTC, AICPA or NASBA. The fact that these other bodies might have different views than does the board does not make the Board's decision in excess of the Board's statutory authority or arbitrary, capricious or an abuse of discretion. La.R.S. 49:964(G)(2) and (5).
Lastly, Mr. Earles asserts that "a growing number of states (16) currently allow CPA's to accept commissions when they are not engaged in the audit and attest function." Assuming that statement is correct, it implies *1293 that 34 states do not so allow CPA commissions. That would place the Board's position with the majority view. In any case, we are reviewing the Board's decision applying the Board's own Rule, which rule is in effect in Louisiana, and not rules addressing similar issues in other jurisdictions.
For the foregoing reasons, the decision of the Board is reinstated and the judgment of the trial court vacating the Board's decision is reversed.
REVERSED AND RENDERED.
NOTES
[1] Mr. Earles does not provide audit or other attest services to clients that he also serves as securities broker so his independence is not an issue.