11ARMSTRONG, Judge.
This is an appeal from a decision of the Civil Service Commission of the City of New Orleans (“the Commission”). The appellant, Wayne DeLarge, was subjected to an involuntary break in service which resulted in a reduction in his salary based upon loss of longevity of continuous service. This action was taken by the appropriate Appointing Authority, the City of New Orleans’ Department of Finance, because Mr. DeLarge had “cashed out” his annual leave (that is, he had been paid the cash equivalent of the accumulated annual leave to which he was entitled instead of taking the time off) without having terminated his position with the City. Mr. DeLarge appealed to the Commission. The Commission assigned a Hearing Officer who received testimony and other evidence and rendered a detailed report to the Commission which recommended that Mr. DeLarge’s appeal be dismissed. A panel of the Commission considered the matter and unanimously issued a detailed decision that Mr. DeLarge’s appeal was without merit and was dismissed. Mr. DeLarge then filed this appeal for judicial review of the Commission’s decision which, in effect, upheld the involuntary break in service. We find no reversible error and so we affirm.
The standard of appellate judicial review of the Commission’s decision is set out in the recent Supreme Court decision Bannister v. Department of Streets, No. 95-0404 (La. 1/16/96), 666 So.2d 641. First, the Commission’s factual determinations are reviewed under the clearly erroneous/manifest error standard of review. Id. Thus, regardless of our own view of the evidence, we may not disturb the Commission’s findings of fact so long as they are reasonable. ┴2Stobart v. DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Second, in deciding whether the Commission’s action was based on legal cause and that the action taken was commensurate with the situation, we should not modify the Commission’s decision unless it is arbitrary, capricious, or characterized by abuse of discretion. Bannister, supra. “Arbitrary or capricious” means the absence of a rational basis for the action taken. Id.
In 1990, Mr. DeLarge was the Comptroller of the City of New Orleans. He was the head of the Bureau of Accounting. He reported to the then Director of the Department of Finance, Paul Mitchell, who in turn reported to the then City’s Chief Administrative Officer, Leonard Simmons. The Chief Administrative Officer reported to the May- or, Sidney J. Barthelemy.
Mr. DeLarge had personal financial problems. Shortly before December 22, 1990, he went to his immediate superior, Paul Mitchell, and requested that he be allowed to “cash out” his accrued annual leave. Mr. Mitchell felt that he could not approve the cash out himself so Mr. DeLarge asked to see Mayor Barthelemy. Mr. Mitchell arranged for Mr. DeLarge to meet the Mayor. At that meeting, Mr. DeLarge explained his request and expressly told the Mayor that , the cash out would not violate any Civil Service rules or regulations. The Mayor, on the express condition that the cash out would not violate any civil service rules or regulations, said that he would have no objection to the cash out. Mr. Mitchell then signed a fifteen thousand dollar check for Mr. DeLarge, which Mr. DeLarge received on December 22,1990.
Some time later, the fifteen thousand dollar cheek came to the attention of the Chief Administrative Officer, Leonard Simmons, who had not been consulted or informed about the cash out. Mr. Simmons, who initially was concerned that the cheek was a forgery, referred the matter to the Office of Municipal Investigation (“OMI”). After meeting with the OMI and Mr. Mitchell, Mr. Simmons realized that the cheek was not a forgery, but became concerned that the cash out violated Civil Service rules. In his twenty-two years in the administration of the *1028 City, Mr. Simmons had never heard of such an annual leave cash out for someone not leaving the City’s employ. Mr. Simmons then met with the Mayor and Joseph Doyle, who was the City’s Director of Personnel, and explained that he believed this annual leave cash out violated Civil Service rules.
|3The basis of Mr. Simmons’ concern was Civil Service Rule VIII, Section 1.7, which states, in pertinent part:
Upon an employee’s death, termination of employment or entry into active duty with the Armed Forces of the United States, after completion of twenty-six consecutive weeks of service under current employment with the City, all accrued annual leave shall be paid to the employee [with certain exceptions not pertinent here].
As Mr. DeLarge had not terminated his employment with the City, and had not died nor entered the Armed Forces, there seemed to be no basis for the cash out.
Subsequently, there was a meeting of Mr. Simmons, Mr. Doyle and the City Attorney with Mr. Mitchell to find out more about the reasons and justification for the cash out. Then, Mr. Doyle met with Mr. DeLarge to discuss the cash out. Mr. Doyle suggested a break in service, with Mr. DeLarge resigning and then being rehired, so as to meet the “termination of employment” criterion of .Rule VIII, Section 1.7 for an annual leave cash out. Mr. DeLarge rejected the suggestion because the break in service would result in a reduction of his salary and expressed the view that he had done nothing wrong. Mr. Doyle asked Mr. DeLarge to think the matter over for a while and perhaps reconsider but, after a few days, Mr. DeLarge contacted Mr. Doyle and reiterated that he would not agree to incur the break in service and that he believed that he had done nothing wrong. It appears that the alternative of Mr. DeLarge repaying the fifteen-thousand dollars was raised but that he was unable to do so because of his financial difficulties.
After some subsequent meetings and discussions with City officials to explore the matter further, Mr. Doyle swore out an affidavit, detailing all the facts, so as to initiate an ethics investigation of the cash out. A copy of this detailed affidavit, together with an explanatory cover letter, was sent to Mr. DeLarge’s attorney. This affidavit and cover letter gave Mr. DeLarge’s attorney a detailed explanation of all the facts that had been learned, the meetings and discussions of City officials which had taken place, the concerns that the cash out violated Civil Service rules and the plans for the ethics proceedings.
On March 5, 1992, Mr. Mitchell met with Mr. DeLarge for about forty minutes to discuss the situation and what might be done to resolve it. It is apparent from his testimony 14that, by this time, Mr. Mitchell was himself concerned that the cash out was a mistake and that some corrective action would have to be taken. If Mr. Mitchell was not now himself convinced that the cash out violated Civil Service Rule VIII, Section 1.7, he was at least prepared to defer to the views of Mr. Simmons, Mr. Doyle and the City’s Law Department that the cash out was such a violation. At any rate, Mr. Mitchell gave Mr. DeLarge a letter, dated March 5,1992, which stated that, because of the cash out, it was necessary that Mr. DeLarge have a break in service in order to comply with Rule VIII, Section 1.7. The letter stated that Mr. De-Large would be terminated and then reinstated. The letter also stated that, as a result of the break in service, Mr. DeLarge’s salary would be reduced by a specified amount. The letter was signed by Mr. Mitchell. It is from this action, the break in service by the March 5, 1992 letter, that Mr. DeLarge appeals.[1]
The break in service provided for in the March 5, 1992, letter was reduced, by a stipulation in the Commission proceeding below, to a minimum. Specifically, Mr. De-Large was terminated, and then reinstated as of the very next working day, so that he would not actually be out of work any days and would not lose any days of wages. Also, although the letter stated that Mr. DeLarge would have to pay back the cash out pro- *1029 eeeds, this was later dropped (except for a small amount accidentally overpaid). Obviously, this was because, with the break in service, the cash out would not be considered violative of Rule VIII, Section 1.7, and so the cash out proceeds did not need to be repaid. The final result is that Mr. DeLarge did not miss any work, did not lose any days’ wages and was allowed to keep the fifteen thousand dollar cash out proceeds. His complaint is that the break in service caused his salary to be reduced.
On appeal, Mr. DeLarge argues that the cash out did not violate Rule VIII, Section 1.7. His argument is that Rule VIII, Section 1.7 specifies three instances in which a cash out may take place but does not expressly prohibit cash outs in other situations. Essentially, he argues that the word “only” does not appear in Rule VIII, Section 1.7— i.e. that the rule does not say that cash outs are allowed only in three specified situations.
IgThe Commission argues that, by specifying three situations in which cash outs are permitted, the Rule necessarily, or at least by implication, excludes cash outs in all other situations. The Commission relies upon the principle of inclusio unius est ex-clusio alterius which, generally speaking, means that the inclusion of one is the exclusion of another. We believe there is considerable merit to the Commission’s position on this point. The mere fact that it was found necessary to have a rule, Rule VIII, Section 1.7, to allow cash outs in specified situations, implies that the cash outs are not permissible in the absence of a rule authorizing them.
Also, Mr. Simmons’s testimony that in his twenty-two years of service in City administration he had never even heard of a cash out, except as authorized by Rule VIII, Section 1.7, establishes that it was the standard practice of the City to cash out annual leave only as provided for by Rule VIII, Section 1.7. Such a longstanding practice is instructive as to the proper interpretation of the Rule. In this regard, Mr. DeLarge points to a single alleged instance in which a City employee who took a position with the Board of Liquidation received a cash out of his annual leave. This alleged incident, which occurred fifteen years before Mr. De-Large’s cash out, was convincingly distinguished in testimony by Mr. Simmons. The Board of Liquidation position was part of neither the City’s classified employee system nor its unclassified employee system but was, instead, a completely different pay system. Also, it was possible that the Board of Liquidation would not have recognized the employee’s annual leave accrued with the City. Mr. DeLarge also points to a situation in which firemen received “holiday pay” but, from the testimony, it is apparent that the firemen’s situation was not at all analogous to Mr. DeLarge’s situation. In sum, Mr. De-Large’s cash out was completely unprecedented and inconsistent with the City’s practice of at least twenty-two years.
The Commission also points to the severe fiscal consequences to the City if employees readily could receive cash in lieu of their annual leave. The City does not have the financial resources to make generally available annual leave cash outs. This is a convincing practical explanation of why the City would limit cash outs to the instances specified in Rule VIII, Sect. 1.7.
|6Thus, for several reasons, we find that the Commission’s interpretation of its Rule VIII, Section 1.7 is not arbitrary and capricious or characterized by abuse of discretion. See Bannister, supra. In particular, there is a rational basis for the Commission’s position. Id. We also believe that it is reasonable to give some deference to the Commission’s interpretation of its own rule. See Earles v. State Board of Certified Public Accountants, No. 96-0505 (La.App. 4th Cir. 12/14/95), 665 So.2d 1288.
Mr. DeLarge also argues on appeal that the Commission did not render its decision timely and, therefore, was obligated to sustain his appeal. Civil Service Rule II, Section 4.16 provides, in pertinent part, that the Commission shall decide appeals “promptly, but in any event within ninety (90) calendar days after ... receipt by the Commission of the Hearing Officer’s report and official transcript of the testimony of said hearing.” The Commission did not decide Mr. DeLarge’s appeal until after the expiration of the rule-specified ninety day period. *1030 However, the Supreme Court recently held that Rule II, Section 4.16 is “directory” in nature, rather than “mandatory,” and that the Commission’s failure to decide an appeal within the ninety day period does not require that the employee’s appeal be sustained or that the Commission’s decision be reversed. Bannister v. Department of Streets, No. 95-0404. Thus, the Commission’s delay in deciding Mr. DeLarge’s appeal, is not a basis for reversing the Commission’s decision in this case.
Civil Service Rule IX, titled “Disciplinary Procedures”, sets out numerous procedures which are to be followed by the Appointing Authority, in this case the Department of Finance, in disciplining an employee. Mr. DeLarge argues on appeal that the March 5, 1992 letter did not conform to Rule IX and that his March 5, 1992, meeting with Mr. Mitchell did not constitute a “pretermination hearing” as required by Rule IX. However, the testimony of all the witnesses below shows that the break in service was not considered to be discipline but was, instead, viewed as curative action that eliminated the violation of Rule VIII, Section 1.7. As a result, the ethics investigation of the cash out was dropped and this pretermitted any discipline. The reduction of Mr. DeLarge’s salary was an automatic result of loss of longevity caused by the break in service, and was not imposed as a penalty. Indeed, Mr. De-Large himself testified 17that consideration was given to performing a “job study” which could result in an increase in the salary for his position (Comptroller) that would offset the loss of longevity pay.
The Commission, in its decision of Mr. DeLarge’s appeal, rejected his contention that he was subjected to “discipline” to which Rule IX is applicable:
During the investigation of the [ultimately dropped] ethics charge, Mr. Mitchell’s attorney sought and was provided with a list of curative actions he could take which would purge the leave payment of its illegal aspects. Mitchell elected as the Appointing Authority to take these actions, as retroactive correction of records. Appellant contends that the action was a disciplinary termination and that it violated procedures set forth in Rule IX.... We disagree.
(emphasis added). The Commission’s characterization of the break in service as nondisciplinary, and not subject to Rule IX, has a rational basis as set out in the testimony described above and so cannot be characterized as arbitrary and capricious or an abuse of discretion. Bannister, supra. Also, we believe that the Commission's interpretation of its own rule, Rule IX is entitled to some deference. Earles, supra.[2]
Nevertheless, while the break in service might not be subject to Rule IX, it was involuntary and adversely affected Mr. DeLarge’s income in a very direct and foreseen way. Thus, we think that the imposition of the break in service was subject to due process requirements. See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Mr. DeLarge was entitled to “some kind of a hearing” which was “appropriate to the nature of the case” prior to involuntary imposition of the break in service. Id. The hearing “need not be elaborate.” Id. The “essential elements” are “notice and an opportunity to respond.” Id. In the present case, as in Loudermill, “all the process that is due is provided by a pretermination opportunity to respond, coupled with [the Commission’s] post-termination administrative procedures.” Id.
|8We have discussed the facts and the procedures employed by the City in some detail above. As described there, Mr. Doyle met with Mr. DeLarge to discuss a proposed break in service, the reasons for it and to seek Mr. DeLarge’s agreement to it. An *1031 affidavit and cover letter, which together gave a detailed description of the facts, the proceedings to date and the concerns about the cash out was then sent to Mr. DeLarge’s attorney. Finally, Mr. DeLarge had a forty minute meeting with Mr. Mitchell which culminated in the imposition of the break in service. The evidence is consistent that Mr. DeLarge was kept fully informed of the City’s concerns about the cash out and that he had the opportunity to, and in fact did, give his side of the story and express his views about the cash out and the break in service. Certainly, the final meeting with Mr. Mitchell, with Mr. DeLarge having been previously briefed by Mr. Doyle and furnished the affidavit and cover letter, was a “healing appropriate to the nature of the case.” Loudermill, supra. In so holding, we note the thorough post-termination Commission administrative procedures available, see id., to which Mr. DeLarge promptly availed himself.[3]
Mr. DeLarge unsuccessfully requested that the Commission appoint an “impartial arbitrator” to substitute for the Hearing Examiner, and the Commission itself, in deciding his administrative appeal. He cites our decision in Cannatella v. Dept. of Civil Service, 592 So.2d 1374 (La.1992), in which we discussed the possibility of an impartial arbitrator being used in cases in which the Commission was too deeply involved in the “prosecution” of a City employee to provide a fair forum for an administrative appeal.
This is not such a case. In Allen v. Louisiana State Board of Dentistry, 543 So.2d 908 (La.1989), it was held that the appearance of fairness was absent when the same person served as “prosecutor” and “judge.” In that case the Board’s attorney was involved in both the investigation and in the Board’s decision. In the present case, the Director of Personnel, Mr. Doyle, was involved in an ethics investigation and a Special Counsel, Mr. Tervalon, was as well. However, that ethics investigation was ended as moot when the break in service was imposed. Perhaps more importantly, there is absolutely no indication in the record that either |9Mr. Doyle or Mr. Tervalon was involved in the Commission’s decision. Instead, a Hearing Examiner received the testimony and other evidence and rendered a report and then a decision was rendered by three members of the Commission.
For the foregoing reasons, the decision of the Commission is affirmed.
AFFIRMED.
BARRY, J., concurs.

. As a result of this March 5, 1992 letter, the ethics proceeding was ended. The break in service was considered “curative” so as to moot the ethics proceedings.

. The appellee’s brief sometimes refers to the break in service as "discipline”. However, the second of the "Issues Presented” listed in the appellee’s brief specifically raises the issue of whether the imposition of the break in service is subject to Rule DC. Thus, we do not think that the appellee concedes that the break in service was discipline subject to Rule IX. In any case, we do not think that such a concession by the appellee (the Department of Finance) would change our standard of appellate review of the Commission's determination that Rule IX is not applicable in this case. See generally Bannister, supra.

. The Commission felt that the due process analysis of Loudermill was not applicable. We disagree for the reasons explained above. As to this issue of federal constitutional law, we feel less need to defer to the Commission's expertise in Civil Service matters. The Loudermill Court did not do so.