Dear Mayor Watkins:
You have asked for an attorney general's legal opinion concerning whether the classified civil service police officers of the City of Covington may form and/or join a local Fraternal Order of Police (FOP) lodge and use city payroll deductions to pay their dues, where the local lodge would be affiliated with the state lodge of the FOP and some portion of their dues would be paid to the state lodge and the state lodge has announced its endorsement of a political candidate for governor. You advised that you asked several knowledgeable persons about this situation and that you could not get a definitive answer to this question. It is our opinion that under the specific factual situation presented in your request that such a deduction must be allowed.
The First and Fourteenth Amendments to this constitution generally protect the rights of citizens to engage in political expression and association. See Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659
(1976) and the authorities cited therein. However, in U. S. Civil ServiceCommission v. National Ass'n of Letter Carriers, AFL-CIO, 413 U.S. 548,93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), the Supreme Court of the United States held that neither the right to associate nor the right to participate in political activities is absolute and upheld federal civil service restrictions on the right of federal employees to participate in political activities. This case is only one of the major cases on this subject where the history of this subject is outlined; other previous cases are cited therein. While restrictions against the endorsement of a partisan candidate for public office or political party office in a political advertisement, a broadcast, campaign literature, or similar material, were upheld, the court noted that that the restrictions did not prohibit the individual employee from expressing his opinion on political subjects and candidates both publicly and privately.
On the state level, Article X, § 9, of the Louisiana Constitution (1974) provides, for the *Page 2 
general classified civil service,
 "Section 9. (A) Party Membership; Elections. No member of a civil service commission and no officer or employee in the classified service shall participate or engage in political activity; be a candidate for nomination or election to public office except to seek election as the classified state employee serving on the State Civil Service Commission; or be a member of any national, state, or local committee of a political party or faction; make or solicit contributions for any political party, faction, or candidate; or take active part in the management of the affairs of a political party, faction, candidate, or any political campaign, except to exercise his right as a citizen to express his opinion privately, to serve as a commissioner or official watcher at the polls, and to cast his vote as he desires.
 "(B) Contributions. No person shall solicit contributions for political purposes from any classified employee or official or use or attempt to use his position in the state or city service to punish or coerce the political action of a classified employee.
 "(C) Political Activity Defined. As used in this Part, "political activity" means an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election. The support of issues involving bonded indebtedness, tax referenda, or constitutional amendments shall not be prohibited."
And, specifically for the municipal fire and police classified civil service, Article X, § 20, provides,
 "Section 20. Article XIV, Section 15.1, Paragraph 34 of the Constitution of 1921 is retained and continued in force and effect."
In turn, such paragraph reads,
 "34. Political Activities Prohibited. a. Political activities by and extending to employees of the classified service are hereby prohibited as follows:
 "(1) No person shall seek or attempt to use any political endorsement in connection with any appointment to a position in the classified service.
 (2) No person shall use or promise to use, directly or indirectly, any official authority or influence, whether *Page 3 
possessed or anticipated, to secure or attempt to secure for any person an appointment or advantage in appointment to a position in the classified service, or an increase in pay or other advantage in employment in any such position, for the purpose of influencing the vote or political action of any person, or for any consideration.
 "(3) No employee in the classified service shall, directly or indirectly, pay, or promise to pay, any assessment, subscription, or contribution for any political organization or purpose, or solicit or take part in soliciting any such assessment, subscription, or contribution. No person shall solicit any such assessment, subscription, or contribution of any employee in classified service. The prohibitions of this Subsection shall not be construed as applying to membership dues paid, or contributions made, to non-political employee organizations, pension funds, civic enterprises, the Louisiana Civil Service League or any similar non-political and non-partisan organization.
 "(4) No employee in the classified service shall (a) be a member of any national, state, or local committee of a political party, (b) be an officer or member of a committee of any factional, political club or organization, (c) be a candidate for nomination or election to public office, (d) make any political speech or public political statement in behalf of any candidate seeking to be elected to public office, or (e) take any part in the management or affairs of any political party or in the political campaign of any candidate for public office, except to privately express his opinion and to cast his vote.
 "(5) No person elected to public office shall, while serving in the elective office, be appointed to or hold any position in the classified service.
 "(6) No appointing authority, or agent or deputy thereof, shall directly or indirectly, demote, suspend, discharge, or otherwise discipline, or threaten to demote, suspend, discharge or otherwise discipline, or discriminate against any person in the classified service for the purpose of influencing his vote, support, or other political activity in any election or primary election. No appointing authority, or agent, or deputy thereof, shall use his official authority or *Page 4 
influence, by threats, promises or other means, directly or indirectly, to coerce the political action of any employee in the classified service.
 "b. The appointing authority shall discharge from the service any employee whom he deems guilty of violating any one or more of the provisions of this Section. The board may, upon its own initiative, investigate any officer or employee in the classified service whom it reasonably believes guilty of violating any one or more of the provisions of this Section. The board shall, within thirty days after receiving the written charges, hold a public hearing and investigation and determine whether such charges are true and correct. If the board should find upon its investigation of any employee that he has violated any of the foregoing provisions, the board shall order the appointing authority to forthwith discharge the guilty employee from the service and the appointing authority shall forthwith discharge the employee.
 "c. Whoever violates this Section shall be subject to the penalties provided in paragraph 37. In addition any employee in the classified service who is discharged because of violating a foregoing provision shall not again be eligible for employment or public office in the classified service for a period of six years from the time of his discharge."
However, in the 1921 Constitution, Article XIV, § 15.1, was applicable only to municipalities having a population from 13,000 to 250,000. R.S.33:2564, applicable to small municipalities [populations from 7,000 to 13,000] and parishes, provides,
"§ 2564. Political activities prohibited
 "A. Political activities by and extending to employees of the classified service are hereby prohibited as follows:
 "(1) No person shall seek or attempt to use any political endorsement, in connection with any appointment to a position in the classified service.
 "(2) No person shall use or promise to use directly or indirectly, any official authority or influence, whether possessed or anticipated, to secure or attempt to secure for any person an appointment or advantage in appointment to a position in the classified service, or an increase in pay or other advantage in employment in any such position, for the purpose of influencing the vote or political action of any person, or for any consideration. *Page 5 
 "(3) No employee in the classified service shall, directly or indirectly, pay or promise to pay any assessment, subscription, or contribution for any political organization or purpose, or solicit or take part in soliciting any such assessment, subscription, or contribution. No person shall solicit any such assessment, subscription or contribution of any employee in the classified service. The prohibitions of this paragraph (3) shall not be construed as applying to membership dues paid or contributions made to non-political employee organizations, pension funds, civic enterprises, the Louisiana Civil Service League or any similar non-political and non-partisan organization.
 "(4) No employee in the classified service shall (a) be a member of any national, state, or local committee of a political party, (b) be an officer or member of a committee of any factional or political club or organization, (c) be a candidate for nomination or election to public office, (d) make any political speech or public political statement in behalf of any candidate seeking to be elected to public office, or (e) take any part in the management or affairs of any political party or in the political campaign of any candidate for public office, except to privately express his opinion and to cast his vote.
 "(5) No person elected to public office shall, while serving in the elective office, be appointed to or hold any position in the classified service.
 "(6) No appointing authority, or agent or deputy thereof, shall directly or indirectly, demote, suspend, discharge or otherwise discipline or discriminate against any person in the classified service for the purpose of influencing his vote, support, or other political activity in any election or primary election. No appointing authority, or agent or deputy thereof, shall use his official authority or influence, by threats, promises or other means, directly or indirectly to coerce the political action of any employee in the classified service.
 "B. The appointing authority shall discharge from the service any employee whom it deems guilty of violating any one or more of the provisions to this Part. The board may, upon its own initiative, investigate any officer or employee in *Page 6 
the classified service whom it reasonably believes guilty of violating any one or more of the provisions of this Part. The board shall, within thirty days after receiving the written charges, hold a public hearing and investigation and determine whether such charges are true and correct. If the board should find upon its investigation of any employee that he has violated any of the foregoing provisions, the board shall order the appointing authority to forthwith discharge the guilty employee from the service and the appointing authority shall forthwith discharge the employee.
 "C. Whoever violates this Part shall be subject to the penalties provided in R.S. 33:2567. In addition any employee in the classified service who is discharged because of violating any of the foregoing provisions shall not again be eligible for employment or public office in the classified service for a period of six years from the time of his discharge."
R.S. 33:2429 and R.S.33:2504, applicable, respectively, to large municipalities and municipalities having populations from 13,000 to 250,000, are similar.
Jurisprudentially, in Cannatella v. Dept. of Civil Service,592 So.2d 1374 (La.App. 4th Cir. 1992) Writ Denied 596 So.2d 215 (La. 1992), the state's Fourth Circuit Court of Appeal held that a classified civil service policeman who was president of a New Orleans police union (a police association) and who publicly announced the results of a poll of the membership of the union favoring a political candidate did not violate Article X, § 9, of the Louisiana Constitution (1974) nor a civil service rule prohibiting the participation in partisan politics. The Fourth Circuit reasoned that while these provisions prohibited such political activities by the classified civil service policeman themselves, they did not prohibit such activities by the union itself as a separate entity. The policeman who announced the results gave no indication of his own personal choice but merely announced these results on behalf of the union of which he was a president and, therefore, mere spokesman as to these poll results. The court also said that each policeman's vote during the poll was his expressing his opinion privately, an activity that was specifically allowed by these provisions. Judge Gulotta of the Fourth Circuit Court of Appeal dissented from the majority opinion and would have found a violation of the civil service prohibition.
However, in Kenner Police Department v. Kenner Municipal Fire PoliceCivil Service Board, 00-1080 (La.App. 5 Cir. 1/23/01), 783 So.2d 392,Writ Denied 2001-0487 (La. 4/20/01), 790 So.2d 635, the state's Fifth Circuit Court of Appeal held that a campaign contribution check signed by five police officers as members of the executive board of a city police association was a personal action taken by the officers individually, and not an action of the association, and as such, officers individually endorsed and contributed *Page 7 
to political candidate in violation of R.S. 33:2504 and R.S. 33:2507
prohibiting political activity by classified civil service employees and requiring mandatory termination of employment. In this case, the five police officers constituted the entire executive board of the police union or association, and these five police officers themselves alone chose to endorse a partisan political candidate and to send him the association's check as a political contribution, all without the approval of the rank-and-file membership of the association and to the displeasure of several rank-and-file members.
The Kenner Police Department case is distinguishable from theCannatella case, in that the five police officers constituting the executive board of the association were clearly identified individually as causing the endorsement and payment of the political campaign contribution.
If the identification of the individual classified civil service policemen within an association as the participants in partisan politics is the key distinguishing characteristic between the differing outcomes of these two cases, then the matter of the FOP favors the same result as the Cannatella case. Indeed, the Fifth Circuit reported in the KennerPolice Department case that the clear identification of five police officers who performed personal actions participating in political activities and making political campaign contributions was the reason for that decision, although there is a hint that another distinguishing characteristic could be a differing view and interpretation of the similar legal provisions involved. Indeed, the state's Fifth Circuit Court of Appeal in the Kenner Police Department case expressly stated,"Cannatella is an interpretation of the law in La.R.S. 33:2504, but it is an interpretation we respectfully decline to follow," Id.,783 So. 2d at 398. Thus, there remains the possibility that the Fifth Circuit decided in the Kenner Police Department case to follow Judge Gulotta's dissent in the Cannatella case. However, the Supreme Court of Louisiana declined writ applications in both cases and did not resolve any purported conflicts in interpretation of law between them. Moreover, to the best of our legal research, the state's First Circuit Court of Appeal, which has jurisdiction over any appeal from the district court in Covington, has never ruled on the issue.
Our understanding of the facts in this circumstance is that the FOP is not a political organization or club as such. Rather, it is a fraternal society of law enforcement officers and retired law enforcement officers bound for the purpose of improving the safety, conditions, and efficiency of performing law enforcement duties and activities and defending themselves against lawsuits and other attacks arising out of them. Members include not only classified civil service municipal policemen but also unclassified law enforcement officers such as sheriffs and sheriff deputies and other law enforcement personnel and retired law enforcement personnel. We are told that the endorsement of a gubernatorial candidate by the state lodge of the FOP was simply a statement of preference; the state lodge of the FOP itself as an entity did not participate in actually campaigning for the election of such candidate and no dues or other FOP monies whatsoever were paid as a political campaign contribution. The state lodge thought that that candidate, if elected, would be better for and improve the plight of law enforcement *Page 8 
officers in Louisiana generally. We are told that the state lodge's endorsement does not mean an endorsement by any local lodge, including the local lodge in the Covington area, none of whose members personally participated in the endorsement, and we are further told that, at the state lodge level, the representative from the Covington area did not vote on the endorsement but abstained completely from this activity altogether.
Based on these facts and limited to them, we think that the City of Covington must legally perform payroll deductions at the request of classified city policemen who join the local Covington lodge of the FOP and ask that such payroll deductions be made from their salaries to pay the dues for their membership in the local FOP lodge.
We trust that this opinion has adequately answered your question; if you have any further questions, please do not hesitate to ask them of us. With warmest regards, we remain.
 Yours very truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: __________________________ Burton P. Guidry Assistant Attorney General
 CCF, Jr./KLR, III/crt